# STATE OF MICHIGAN

# COURT OF APPEALS

IONIA PUBLIC SCHOOLS,

        Respondent-Appellee,

v

IONIA EDUCATION ASSOCIATION,

        Charging Party-Appellant.

FOR PUBLICATION
July 28, 2015
9:05 a.m.

No. 321728
MERC
LC No. 00-000136

Before: SERVITTO, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Charging party, Ionia Education Association, appeals as of right the order of the Michigan Employment Relations Commission (MERC) dismissing charging party's unfair labor practice charge against respondent, Ionia Public Schools. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

### A. THE "BID-BUMP" PROCEDURE

This case primarily involves a matter of statutory interpretation and the pertinent facts are undisputed. Charging party and respondent are parties to a collective bargaining agreement (CBA) that expired on or about August 25, 2011. The expired CBA contained sections that described, among other matters, a procedure for the assignment of vacant teaching positions. The CBA called for a meeting, referred to by the parties as a "bid-bump" meeting or "teacher assignment meeting" that was to take place near the end of the school year, in either April, May, or June. For the sake of simplicity, the purpose of the "bid-bump" meeting, as set forth in the now-expired CBA, was to permit teachers to bid on open positions, based on a number of criteria. According to charging party, it had utilized the bid-bump procedure for approximately 27 years.

### B. MCL 423.215(3)(j)

The Public Employee Relations Act (PERA), MCL 423.201 et seq., establishes, among other matters, the duties of public employers and public employees with regard to collective bargaining. MCL 423.215(3) sets forth prohibited subjects of bargaining between a public school employer and the bargaining representative of its employees. The matters described as "prohibited subjects of bargaining "are within the sole authority of the public school employer to

-1-

decide." MCL 423.215(4). Historically, PERA did not include decisions regarding the placement of teachers among the prohibited subjects of bargaining. In 2011, the Legislature enacted a series of amendments to PERA and expanded the list of prohibited subjects of bargaining between public school employers and employees. 2011 PA 103, which became effective July 19, 2011, added several prohibited subjects, including as set forth in MCL 423.215(3)(j). MCL 423.215(3)(j) prohibits bargaining with regard to:

> Any decision made by the public school employer regarding teacher placement, or the impact of that decision on an individual employee or the bargaining unit.[1]

## C. UNFAIR LABOR PRACTICE CHARGE

In the spring of 2012, respondent did not hold the bid-bump meeting despite three requests by charging party. Charging party filed an unfair labor practice charge in July 2012, citing the failure to hold a bid-bump meeting as set forth in the CBA.[2] In response, respondent argued that the enactment of MCL 423.215(3)(j) removed any duty to bargain over teacher-placement decisions and gave it unilateral authority to make decisions relating to teacher placement. According to respondent, it was no longer required to employ the bid-bump procedure described in the now-expired CBA. Following oral argument, the Administrative Law Judge (ALJ) agreed with respondent and issued a recommended decision and order dismissing the unfair labor practice charge. Accepting as true the facts alleged by charging party, the ALJ denied charging party's request for an evidentiary hearing as it found that there were no disputed issues of fact. The ALJ also found that the language of § 15(3)(j) was clear and that it prohibited bargaining over any decision pertaining to teacher placement, including the bid-bump procedure.

Charging party filed exceptions to the ALJ's recommended decision and order and requested oral argument and an evidentiary hearing. In a written opinion and order, MERC denied the request for oral argument and an evidentiary hearing, finding that neither would aid in its decision. MERC adopted the ALJ's factual summary. As to the interpretation of § 15(j)(3), MERC rejected charging party's exceptions and found that the ALJ did not err in its

---

[1] 2011 PA 103 added §15(3)(j) to MCL 423.215, prohibiting as a subject of bargaining "Any decision made by the public school employer regarding the placement of teachers, or the impact of that decision on an individual employee or the bargaining unit." 2012 PA 45, which became effective March 13, 2012, amended § 15(3)(j), changing the phrase "the placement of teachers" to the phrase "teacher placement." The 2012 version was in effect at the time charging party filed its claim of unfair labor practice in July 2012; that same version remains in effect today. See MCL 423.215(3)(j).

[2] Although the CBA expired on August 25, 2011, charging party contended that during negotiations for a successor collective bargaining agreement, respondent was required to maintain the status quo with respect to mandatory subjects of bargaining.

interpretation of the statute. MERC dismissed charging party's unfair labor practice charge in its entirety. This appeal followed.

## II. INTERPRETATION OF MCL 423.215(3)(j)

### A. STANDARD OF REVIEW

Our review of MERC's interpretation of MCL 423.215(3)(j) is de novo. *Decatur Pub Schs v Van Buren Co Ed Ass'n*, __ Mich App __; __ NW2d __ (Docket No. 320272, issued March 17, 2015), slip op at 5. However, we note that our Supreme Court has explained that "an agency's interpretation of a statute is entitled to 'respectful consideration,' but courts may not abdicate their judicial responsibility to interpret statutes by giving unfettered deference to an agency's interpretation. Courts must respect legislative decisions and interpret statutes according to their plain language." *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 93; 754 NW2d 259 (2008). This standard requires "cogent reasons" for overruling an agency's interpretation." *Id.* at 103. "However, the agency's interpretation is not binding on the courts, and it cannot conflict with the Legislature's intent as expressed in the language of the statute at issue." *Id.*

### B. PERA AND COLLECTIVE BARGAINING

"PERA governs the relationship between public employees and governmental agencies." *Decatur Pub Schs*, __ Mich App at __, slip op at 5. The act imposes upon public employers a mandatory duty to bargain over certain subjects, such as "wages hours, and other terms and conditions of employment . . . ." MCL 423.215(1). See also *Decatur Pub Schs*, __ Mich App at __, slip op at 6. While PERA requires bargaining on some subjects, § 15(3) sets forth subjects that are prohibited from bargaining. See *Mt Pleasant Pub Schs v Michigan AFSCME Council 25*, 302 Mich App 600, 608-609; 840 NW2d 750 (2013). "Except as otherwise provided in subsection (3)(f),[3] the matters described in subsection (3) are prohibited subjects of bargaining between a public school employer and a bargaining representative of its employees, and, for the purposes of this act, are within the sole authority of the public school employer to decide." MCL 423.215(4). If there is no duty to bargain over the subject matter, the employer can take unilateral action. *Decatur Pub Schs*, __ Mich App at __, slip op at 10. This Court has explained that, when the list of prohibited subjects of bargaining found in subsection 3 is read together with subsection 4, the subsections "evince a legislative intent to make public school employers solely responsible for these subjects by prohibiting them from being the subjects of enforceable contract provisions and by eliminating any duty to bargain regarding them." *Michigan State AFL-CIO v Michigan Employment Relations Comm*, 212 Mich App 472, 487; 538 NW2d 433 (1995).

2011 PA 103 expanded the list of prohibited subjects of bargaining. Pertinent to this case, 2011 PA 103 added § 15(3)(j), which expanded the prohibited subjects of bargaining to

---

[3] As referenced above, § 15(3)(f) pertains to decisions to contract with third parties for noninstructional support services and is not implicated in this case.

include "Any decision made by the public school employer regarding teacher placement, or the impact of that decision on an individual employee or the bargaining unit." MCL 423.215(3)(j). The salient issue in this case is whether § 15(3)(j) and the prohibition on bargaining over "[a]ny decision" regarding "teacher placement" applies to the bid-bump procedure.

The starting point for this inquiry is the plain language of the statute. *Decatur Pub Schs*, __ Mich App at __, slip op at 7.

> [I]n interpreting a statute, we consider both the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme. As with any statutory interpretation, our goal is to give effect to the intent of the Legislature by focusing on the statute's plain language. *Speicher v Columbia Twp Bd of Trustees*, 497 Mich 125, 133-134; 860 NW2d 51 (2014) (citations and quotation marks omitted).]

If statutory language is clear, we must enforce the statute as it is written. *Braska v Challenge Mfg Co*, 307 Mich App 340, 352; 861 NW2d 289 (2014). We may consult a dictionary to determine the plain and ordinary meaning of statutory terms that are undefined. *Spartan Stores, Inc v Grand Rapids*, 307 Mich App 565, 574; 861 NW2d 347 (2014).

## C. APPLICATION

Turning to the statute at issue, § 15(3)(j) provides that collective bargaining between a public school employer and a bargaining representative of its employees "shall not include" "[*a]ny decision* made by the public school employer *regarding teacher placement*, or the *impact of that decision on an individual employee or bargaining unit*." MCL 423.215(3)(j) (emphasis added). The word "any" is not defined in the statute, but is commonly understood to be all-encompassing, meaning "every" or "all" and can be "used to indicate one selected without restriction" or can be used "to indicate a maximum or whole." *Merriam-Webster's Collegiate Dictionary* (11th ed). The word, "decision," meanwhile, is defined to mean "the act or process of deciding." *Merriam-Webster's Collegiate Dictionary* (11th ed). The term "placement" as used in the statute is commonly understood to refer to "an act or instance of placing" or "the assignment of a person to a suitable place (as a job or a class in school)." *Merriam-Webster's Collegiate Dictionary* (11th ed).

Given the broad language employed in § 15(3)(j), we find that the Legislature intended to prohibit an employer from bargaining over any decision, including policies or procedures such as the bid-bump procedure, with regard to teacher placement. The plain language of the statute gives broad discretion to public school employers to make "[a]ny decision," i.e., every, or all decisions, "unmeasured or unlimited in amount, number or extent," regarding or concerning teacher placement. The statute contains no limitations on the employer. Also, the statute refers to decisions, which include the act or *process* of deciding. By stating that there was no duty to bargain over "[a]ny decision" regarding teacher placement and providing no limitation or explanation thereafter, the Legislature demonstrated its intent to afford public school employers broad discretion over any type of teacher placement decision or the impact of that decision on individual teachers or the bargaining unit as a whole. Cf. *People v Cunningham*, 496 Mich 145, 154-155; 852 NW2d 118 (2014) (reasoning that where the Legislature provided courts with the

authority to impose "any cost" in MCL 769.1k(1)(b)(*ii*) and thereafter specified with particularity the costs that could be imposed, such language "suggests strongly that the Legislature did not intend MCL 769.1k(1)(b)(*ii*) to provide courts with the independent authority to impose 'any cost.' "). In other words, the Legislature intended to remove from the ambit of bargaining *any decision* concerning the assignment or placement of teachers, and that *any* decision-making about teacher placement or assignments is to be within the sole discretion of the employer. The broad language used in the statute necessarily includes any decision-making process as well; consequently, policies and procedures used to make teacher placement decisions such as those at issue in the instant case undoubtedly fall within the broad reach of "any decision" regarding teacher placement. Therefore, the plain language of § 15(3)(j) precludes bargaining over the bid-bump procedure, or any other procedure utilized in teacher placement.

With regard to charging party's argument about placement policies and procedures, we find that it would make little sense that a public school employer could be compelled to bargain about an overarching placement plan or process, e.g., the bid-bump procedure previously employed in the instant case, yet have no duty to bargain over the placement decisions that result from that plan. Indeed, the decision-making process or plan would be of little import if the employer could simply make any decision it wanted about placement, regardless of the plan or procedure. Also, such a result would be contrary to the broad language employed in the statute. "When construing a statute, a court should not abandon the cannons of common sense." *In re Consumers Energy*, __ Mich App __; __ NW2d __ (Docket Nos. 314361; 316868, issued May 28, 2015), slip op at 6 (citations and quotation marks omitted). Here, construing the statute in the manner proposed by charging party is not appropriate.

Charging party argues that the phrase "teacher placement" limits the scope of an employer's decision-making to decisions involving individual teachers. This argument is not supported by the text of the statute. The term "teacher placement" could equally refer to the placement of a single teacher or to the act of placing multiple teachers, and charging party provides no cogent argument as to why it should be limited to a single teacher. To read the statute in the manner proposed by charging party would essentially require this Court to read the statute as applying to "[a]ny decision" applying to *individual teachers regarding specific assignments*, when the Legislature did not see fit to include such language in the statute. This Court cannot do so. *Mich Ed Ass'n v Secretary of State* (*On Rehearing*), 489 Mich 194, 217; 801 NW2d 35 (2011) ("nothing may be read into a statute that is not within the manifest intent of the Legislature as derived from the act itself.") (citation and quotation marks omitted). Furthermore, charging party's attempt to segregate the phrase "teacher placement" from the rest of the language employed in § 15(3)(j) is an inappropriate way to assess the intent of the Legislature. See *Speicher*, 497 Mich at 138 ("An attempt to segregate any portion or exclude any portion of a statute from consideration is almost certain to distort legislative intent."). Rather, the phrase must be construed in context. When viewed in context, the phrase "teacher placement" is intended to refer to the placement of an individual teacher or to the placement of multiple teachers. As noted, the phrase "teacher placement" follows the phrase "[a]ny decision." To construe the phrase "teacher placement" as applying to only those decisions made about individual teachers would significantly limit and undermine the broad, encompassing phrase, "[a]ny decision" used by the Legislature. In addition, § 15(3)(j) provides, in pertinent part, that there is no duty to bargain over teacher placement, "or the impact of that decision *on an individual employee or the bargaining unit*." (Emphasis added). This language does not suggest

that "teacher placement" is meant to refer only to decisions about specific teachers, as it invokes the "bargaining unit" as a whole, as well as individual teachers.

Charging party argues that reading MCL 423.215 in context compels the conclusion that its interpretation of the statute is correct. It notes that several other prohibited subjects of bargaining in § 15 exclude from bargaining decisions "about the development, content, standards, procedures, adoption, and implementation" of the public school employer's policies and procedures in certain areas. See MCL 423.215(3)(k) (providing that a public school employer does not have a duty to bargain with regard to "[d]ecisions about the development, content, standards, procedures, adoption, and implementation of the public school employer's policies regarding personnel decisions when conducting a staffing or program reduction or any other personnel determination resulting in the elimination of a position . . . ."); MCL 423.215(3)(*l*) (a public school employer does not have a duty to bargain with regard to "[d]ecisions about the development, content, standards, procedures, adoption, and implementation of a public school employer's performance evaluation system . . . .); MCL 423.215(3)(m) (a public school employer does not have a duty to bargain with regard to "decisions about the development, content, standards, procedures, adoption, and implementation of a policy regarding discharge or discipline of an employee, decisions concerning the discharge or discipline of an individual employee, or the impact of those decisions on an individual employee or the bargaining unit."); MCL 423.215(3)(o) (a public school employer does not have a duty to bargain about "[d]ecisions about the development, format, content, and procedures of the notification to parents and legal guardians required under [MCL 380.1249a]" regarding teachers who have been rated as "ineffective."). Charging party's argument is unavailing. As noted, the plain language of § 15(3)(j) provides broad, unilateral discretion to the public school employer with regard to "[a]ny decision" regarding teacher placement. Charging party's proposed construction would be inconsistent with that language. And, it would make little sense to give an employer this broad authority yet require the employer to bargain over an overarching policy regarding teacher placement, particularly a policy such as the bid-bump policy employed in the instant case wherein teachers had authority over placement and transfer decisions.

Charging party also argues that an earlier draft of 2011 PA 2013 compels this Court to interpret § 15(3)(j) in the manner it proposes. Courts may consider legislative history, including "the changes in the bill during its passage." *Dep't of Transp v Thrasher*, 196 Mich App 320, 323; 493 NW2d 457 (1992), aff'd 446 Mich (1994). See also *Klida v Braman*, 278 Mich App 60, 70; 748 NW2d 244 (2008). Here, charging party notes that as initially proposed by the House, § 15(3)(j) provided:

(j) Decisions about the development, content, standards, procedures, adoption, and implementation of the public school employer's policy for placement of teachers required under section 1247 of the revised school code, 1976 PA 451, MCL 380.1247,[4] any decision made by the public school employer pursuant to

---

[4] MCL 380.1247 was repealed by 1995 PA 289, effective July 1, 1996. In pertinent part, MCL 380.1247(c) provided that "an administrator or administrators, usually called a building principal," "shall" among others, "[s]ubmit recommendations to the superintendent for the

that policy, or the impact of those decisions on an individual employee or the bargaining unit. [2011 HB 4628.]

Charging party finds significant the initial inclusion, but subsequent rejection, of language pertaining to decisions about the "development, content, standards, procedures, adoption, and implementation of the public school employer's policy for placement of teachers . . . ." Charging party argues that 2011 HB 4628 demonstrates that the Legislature initially considered including among the lists of prohibited subjects of bargaining a public school employer's decisions about procedures and standards used in teacher placement decisions, but declined to adopt such a broad policy. Instead, according to charging party, the Legislature elected to use the phrase "[a]ny decision," which charging party contends is not as broad in its scope as the language that was initially proposed in 2011 HB 4628, but subsequently rejected.

Charging party's citation to 2011 HB 4628 is unavailing. The plain language of § 15(3)(j) is clear that it applies, without limitation, to "[a]ny decision" regarding teacher placement. That the Legislature considered adding to the statute language pertaining to decisions about policies and procedures for the placement of teachers and any decision pursuant to those policies is of little consequence, given the broad prohibition that was eventually passed. Indeed, we find the language that the Legislature eventually adopted in § 15(3)(j) is *broader* in scope than the language proposed in 2011 HB 4628, as it applies to "[a]ny decision," without limitation. Decisions about policies and procedures regarding teacher placement would necessarily fall within the ambit of "[a]ny decision" about teacher placement. We will not resort to legislative history to "cloud a statutory text that is clear." *In re Certified Question (Kenneth Henes Special Projects Procurement v Continental Biomass Indus, Inc)*, 468 Mich 109, 113; 659 NW2d 597 (2003) (citation and quotation marks omitted).

In sum, we find that the plain meaning of § 15(3)(j) demonstrates the intent of the Legislature to give public school employers discretion regarding a broad spectrum of teacher placement decisions. This broad discretion applies not only to placement decisions themselves, but also to any decision the employer makes in regard to how it decides to go about making those decisions. Any decision regarding teacher placement, which is a prohibited subject of bargaining, cannot be the subject of a collective-bargaining agreement. See *Baumgartner v Perry Pub Schs*, __ Mich App __; __ NW2d __ (Docket Nos. 313945; 314158; 314696), slip op at 11 (interpreting MCL 423.215(3)(k), which provides that decisions about a school employer's personnel decisions are prohibited subjects of bargaining). There are no cogent reasons for overturning MERC's interpretation of this statute. See *In re Complaint of Rovas* 482 Mich at 103.

Charging party argues that MERC's (and the ALJ's) interpretation of the statute, with which we agree, is a "broad construction" of § 15(3)(j), and charging party encourages this Court to adopt a narrower construction. Contrary to charging party's contentions, such interpretation

appointment, assignment, promotion, or dismissal of personnel assigned to supervision of the administrator." Legislative history reveals that the Legislature contemplated bringing back and altering the now-defunct MCL 380.1247 at the time it considered the passage of 2011 HB 4628. See House Legislative Analysis, HB 4625-4628, May 10, 2011.

of the statute does not constitute a broad construction; rather, it constitutes an interpretation of the statute *as it is written*. As written, the statute is broad in its scope and application. We must adhere to the plain language of the statute and the intent of the Legislature as expressed plainly therein. Our role is to interpret the law and to apply statutes as they are written, not to question the Legislature or to alter plain statutory language.[5] See *Johnson v Recca*, 492 Mich 169, 187; 821 NW2d 520 (2012).

## III. REMAINING CHALLENGES

Charging party next raises issues concerning MERC's factual findings, its failure to hold an evidentiary hearing, and its failure to permit additional oral argument. MERC's factual findings are conclusive "if they are supported by competent, material, and substantial evidence on the record considered as a whole." *Van Buren Co Ed Ass'n*, __ Mich App at __, slip op at 5. "This evidentiary standard is equal to the amount of evidence that a reasonable mind would accept as sufficient to support a conclusion. While it consists of more than a scintilla of evidence, it may be substantially less than a preponderance." *Mt Pleasant Pub Schs*, 302 Mich App at 615 (citation and quotation marks omitted). With regard to charging party's argument that MERC erred by failing to hold oral argument or an evidentiary hearing, our review is for an abuse of discretion. See MCL 423.216(b) (explaining that MERC "may"[6] take further testimony or "hear argument" after the hearing before the ALJ); *Sault Ste Marie Area Pub Schs v Mich Ed Ass'n*, 213 Mich App 176, 182; 539 NW2d 565 (1995).

## A. MERC'S FACTUAL FINDINGS

Charging party first contests the sufficiency of MERC's factual findings, arguing that those findings failed to accurately describe the bid-bump procedure. In evaluating this issue, we note that both the ALJ and MERC accepted as true the facts alleged by charging party and that they both described the facts in this case as being undisputed. Rather than disputing any particular findings, charging party states that "MERC's factual finding that Article X [of the CBA, which is the provision that describes the bid-bump procedure] constitutes an unenforceable 'prohibited subject' is not supported by any evidence in the record and therefore should be reversed." Although styled as a challenge to MERC's factual findings, this is essentially an argument that MERC's legal interpretation of § 15(3)(j) is incorrect. As noted above, that position is without merit.

## B. EVIDENTIARY HEARING

We also find that MERC did not abuse its discretion when it declined to hold an evidentiary hearing. There have never been any disputed factual issues in this case and all facts

---

[5] To the extent charging party proffers a public policy argument, it offers no reason why its vague assertion to public policy should overcome the plain language of the statute.

[6] The use of the term "may" denotes discretion. See *In re Estate of Weber*, 257 Mich App 558, 562; 669 NW2d 288 (2003).

alleged by charging party were accepted as true. The only salient issue in this case was and continues to be an issue of law, i.e., whether the newly-amended § 15(3)(j) applied and prohibited the bid-bump procedure at issue in this case. Once again, we find that charging party's argument is essentially a challenge to the pertinent *legal* issue in this case, not to any factual issue. MERC did not abuse its discretion by declining to hold an evidentiary hearing. See *Sault Ste Marie Area Pub Schs*, 213 Mich App at 182 (explaining that "[i]n the absence of a factual dispute, the MERC did not abuse its discretion in declining to hold an evidentiary hearing.").

## C. ORAL ARGUMENT

Lastly, charging party argues that MERC erred by declining to hold oral argument. Charging party was granted oral argument before the ALJ; however, MERC denied charging party's request for further argument when it decided charging party's exceptions to the ALJ's recommended decision and order. In *Smith v Lansing Sch Dist*, 428 Mich 248, 250, 259-260; 406 NW2d 825 (1987), our Supreme Court reversed a MERC decision where the charging parties were not given an opportunity to present oral argument. In that case, the hearing referee *sua sponte* issued a decision recommending that MERC summarily dismiss the unfair labor practice charge. *Id.* at 251-252. The charging parties filed an exception with MERC, which denied the unfair labor practice charge without holding either a hearing[7] or oral argument. The Court held that the failure to afford the charging parties oral argument required remand. *Id.* In doing so, the Court examined MCL 423.216(a), which provides that in the event of an unfair labor practice charge under PERA, "the commission, or any agent designated by the commission for such purposes, may issue and cause to be served upon the person a complaint stating . . . *and containing a notice of hearing* before the commission or a commissioner thereof, or before a designated agent . . . ." *Smith*, 428 Mich at 254, quoting MCL 423.216(a) (Emphasis added). The Court also noted that MCL 423.216(a) provided, as it does now, that "[a]ny proceeding" under § 16(a) "shall be conducted pursuant to" sections 24.271 to 24.287 of the Michigan Administrative Procedures Act. *Id.* See also MCL 423.216(a). Pertinent to the issue of oral argument, the Michigan Administrative Procedures Act provides that, in a contested case, "[t]he parties shall be given an opportunity to present oral and written arguments on issues of law and policy and an opportunity to present evidence and argument on issues of fact." MCL 24.272(3). See also *Smith*, 428 Mich at 259. Because the charging parties in *Smith* were never afforded the opportunity to present oral arguments, the Court remanded the case to MERC for further proceedings and to afford the charging parties an opportunity to present oral argument. *Id.* at 259-260.

---

[7] The Court in *Smith*, 428 Mich at 251, held that conducting an evidentiary hearing in that case was unnecessary because "all alleged facts of the charging party are to be taken as true" when summarily dismissing a case. Here, as noted, all of the facts alleged by charging party were taken as true and there were no disputed issues of fact. Thus, no evidentiary hearing was required. *Id.*

We note that the issue in *Smith* was not the same as the issue raised in the instant case. In *Smith*, the charging party *was never* afforded oral argument. Here, charging party was afforded oral argument before the ALJ, but not before MERC. Proceedings before MERC are first generally held before a referee or ALJ or other MERC designee, pursuant to MCL 423.216(a). See, generally, *Detroit v Detroit Fire Fighters Ass'n, Local 3434, IAFF*, 204 Mich App 541, 554-555; 517 NW2d 240 (1994). If a party takes exception to the recommended decision and order, then the matter proceeds before "the commission," i.e., MERC, pursuant to the procedure set forth in MCL 423.216(b). See *North Dearborn Hts Federation of Teachers v North Dearborn Hts Sch Dist*, 382 Mich 105, 107; 168 NW2d 219 (1969). In pertinent part, MCL 423.216(b) provides that:

> The testimony taken by the commissioner, agent, or the commission shall be reduced to writing and filed with the commission. Thereafter the commission upon notice may take further testimony or hear argument.

As our Supreme Court stated in *North Dearborn Hts*, 382 Mich at 107, the above requirement "is obviously for the reason that such a provision is to cover the situation . . . where the entire board does not hear the matter itself, but permits a hearing examiner to conduct the hearing, and then acts as a reviewing body of the examiner's report and recommended order." Significant to the case at bar, § 16(b), unlike § 16(a), does not require MERC to grant oral argument, but instead gives MERC discretion. Indeed, § 16(b) states that after testimony is taken by the ALJ or MERC [acting in the same capacity as an ALJ] in an earlier proceeding, MERC "upon notice may take further testimony *or* hear argument.").[8] Accordingly, while oral argument is required under § 16(a), it is not mandated by § 16(b).

Additionally, we note MERC's administrative rules related to hearings before an ALJ and to those before MERC. As the Court recognized in *Smith*, 428 Mich at 255, MERC has authority to promulgate its own rules. Mich Admin Code R 423.173 provides that, at the close of a hearing before an ALJ, "[a] party *is entitled* upon request to a reasonable period at the close of the hearing for oral argument, which shall be made part of the record." (Emphasis added). Thus, in accordance with *Smith* and MCL 423.216(a), a party is entitled to oral argument before the ALJ. With regard to proceedings before MERC after a matter has already been heard by an ALJ or other designee of MERC, Mich Admin Code R 423.178 provides as follows:

> If a party desires to argue orally before the commission, a written request shall accompany the exceptions, cross exceptions, or the brief in support of the decision and recommended order, and at the same time, the request shall be served on all other parties. The request must indicate "oral argument requested" in bold capital letters on the first page of the pleading under the caption. The commission, on its own motion, may also direct oral argument. The commission shall notify the

---

[8] "In general, the disjunctive term 'or' refers to a choice or alternative between two or more things[.]" *AFSCME Council 25 v Wayne Co*, 292 Mich App 68, 92-93; 811 NW2d 4 (2011) (citation and quotation marks omitted).

parties of the time and place of oral argument. The commission may limit the time for oral argument by each party.

Unlike a hearing before an ALJ, Rule 423.178 does not mandate oral argument; rather, it simply states that a party may *request* oral argument. The idea that a party is to request oral argument suggests that MERC has discretion whether to grant oral argument at this stage. In addition, the rule does not require or guarantee oral argument.

Turning to the instant case, charging party's citation to *Smith* is unavailing. Unlike in *Smith*, charging party was afforded oral argument before the ALJ. It was only denied oral argument before MERC. This was permitted under MCL 423.216(b) and Mich Admin Code R 423.178. Consistent with Mich Admin Code R 423.178, the language employed in MCL 423.216 indicates that MERC has discretion over whether to grant oral argument after the matter has been heard by the ALJ. There is no merit to charging party's contention that it is entitled to reversal because MERC found additional oral argument would be unnecessary to its review of the case.[9]

Affirmed.

/s/ Deborah A. Servitto
/s/ Jane M. Beckering
/s/ Mark T. Boonstra

---

[9] Moreover, charging party fails to explain how additional oral argument would have made a difference in this case, or what arguments it would have made had it been granted another round of oral argument.

-11-