*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VAN BUREN EDUCATION ASSOCIATION
MEA/NEA,

UNPUBLISHED
August 24, 2023

Respondent-Appellee,

v

No. 362076
MERC
LC No. 21-001225-CU

VAN BUREN PUBLIC SCHOOLS,

Charging Party-Appellant.

Before: GADOLA, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

Appellant, Van Buren Public Schools, appeals as of right the decision and order of the Michigan Employment Relations Commission (MERC), denying its unfair labor practice charge against respondent, Van Buren Education Association MEA/NEA, in regard to respondent's request to arbitrate a grievance pertaining to the application of an "overage compensation" provision in the parties' collective-bargaining agreement (CBA) to a teacher teaching online classes during the 2020-2021 school year. MERC concluded that the grievance did not pertain to a prohibited subject of bargaining under the Public Employment Relations Act (PERA), MCL 423.201 *et seq.* For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

Appellant is the school district headquartered in Belleville. Respondent is the collective bargaining unit for the district's teachers. Section 7.2.3 of the parties' CBA provides for "overage compensation" for teachers whose total class enrollment exceeds a threshold number of students. That section provides:

Teachers who have total enrollment of more than 175 students in grades 7-12 (excluding band, choir, physical education & art) will be allowed to apply for Overage Compensation each semester. Teachers who are over this threshold will be compensated $1 per student, per day. Enrollment will be calculated using the class size number from MI-Star. After fall count day if an overage is still occurring, the teacher will be compensated from the date the overage began or occurred at the

-1-

rate determined by class enrollment on fall count day. Payments for overages will be made at the Feb 25th pay and June 25th pay.

Because of the COVID-19 pandemic, the district arranged for students to attend classes remotely for the 2020-2021 academic year. Appellant and respondent executed the following Letter of Understanding pertaining to remote online instruction:

> In our continuing efforts to allow our students at Belleville High School as many course offerings that we can provide given the current COVID pandemic we are experiencing, VBPS and the VBEA agree that BHS staff who agree to teach students remotely after their regular workday and in excess of their contracted number of hours will be compensated at a rate of $190.00 per student per semester. The class size shall not exceed 50 students, and when possible all staff members who are qualified to teach the course will be offered an opportunity to teach the course. This letter of understanding will sunset at the end of the 2020-2021 school year (June 30, 2021).

Relevant to this appeal, a high school teacher, Marcus Napthen, was assigned more than 175 students in the fall of 2020. Respondent filed a grievance on his behalf on December 18, 2020. The high school principal and the district superintendent both denied the grievance on the ground that the subject of the grievance involved a prohibited subject of bargaining under MCL 423.215(3)(h), which prohibits collective bargaining regarding "[d]ecisions concerning use and staffing of experimental or pilot programs and decisions concerning use of technology to deliver educational programs and services and staffing to provide that technology, or the impact of those decisions on individual employees or the bargaining unit." Respondent advanced the grievance to arbitration. Appellant responded by filing an unfair labor practice charge with MERC. Appellant argued that the "attempt to advance a grievance to arbitration under the parties' contract is predicated on a prohibited subject of bargaining pursuant to Section 15(3)(h) [of] PERA and therefore violates [MCL 423.210(2)(d)] of the Act." An administrative law judge (ALJ) issued a recommended decision and order in which he found that respondent was attempting to enforce a "stand-alone contractual provision" related to teachers' compensation. Accordingly, the ALJ concluded that respondent's attempt to enforce § 7.2.3 of the CBA did not violate MCL 423.210(2)(d).

MERC affirmed the ALJ's decision. MERC concluded that the pertinent inquiry involved the parties' intent regarding the "overage compensation" provisions in the CBA. Respondent's grievance was premised solely on § 7.2.3 of the CBA. MERC reasoned that "[a]lthough the Employer urges that only the Letter of Understanding applies to virtual teaching assignments, the fact remains that if an arbitrator finds Section 7.2.3 inapplicable to teachers who are teaching through a virtual platform, then the Union's grievance will be denied, and the Employer will be relieved of any contractual obligation to pay the compensation sought."

## II. PROHIBITED SUBJECT OF BARGAINING

### A. STANDARD OF REIVEW

Appellant argues that MERC erred by affirming the ALJ's decision. This Court reviews MERC decisions pursuant to Const 1963, art 6, § 28, and MCL 423.216(e). *Calhoun Intermediate Sch Dist v Calhoun Intermediate Ed Ass'n*, 314 Mich App 41, 46; 885 NW2d 310 (2016). Const 1963, art 6, § 28 provides that

> [a]ll final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record. . . .

"MERC's factual findings are 'conclusive if they are supported by competent, material, and substantial evidence on the record considered as a whole.' " *Calhoun Intermediate Sch Dist*, 314 Mich App at 46 (quotation marks and citations omitted). MERC's legal rulings are reviewed de novo, but "may not be disturbed unless they violate a constitutional or statutory provision or they are based on a substantial and material error of law." *Id*. (citation omitted).

Questions of statutory interpretation are reviewed de novo. *Makowski v Governor*, 495 Mich 465, 470; 852 NW2d 61 (2014). When interpreting a statute, this Court must "give effect to the intent of the Legislature." *Sau-Tuk Indus, Inc v Allegan Co*, 316 Mich App 122, 136; 892 NW2d 33 (2016) (quotation marks and citation omitted). "The most reliable evidence of that intent is the language of the [statute] itself, which must be given its plain and ordinary meaning." *Id*. at 137. If the words of the statute are clear and unambiguous, they "must be enforced as written." *Id*. "[A]gency interpretations are entitled to respectful consideration, but they are not binding on courts and cannot conflict with the plain meaning of the statute." *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 117-118; 754 NW2d 259 (2008).

### B. ANALYSIS

### 1. INTERPRETATION

"The PERA governs the relationship between public employees and governmental agencies." *Macomb Co v AFSCME Council 25*, 494 Mich 65, 77; 833 NW2d 225 (2013). Section 15 of PERA provides that a public employer has a duty to bargain with representatives of its employees and may enter into collective bargaining agreements with those representatives with respect to 'wages, hours, and other terms and conditions of employment,' which are considered 'mandatory' subjects of bargaining. *Ionia Ed Ass'n v Ionia Pub Sch*, 311 Mich App 479, 484; 875 NW2d 756 (2015), quoting MCL 423.215(1). Section 15 also enumerates the prohibited subjects of bargaining. Section 15 states, in pertinent part:

(1) A public employer shall bargain collectively with the representatives of its employees as described in section 111 and may make and enter into collective bargaining agreements with those representatives. Except as otherwise provided in this section, for the purposes of this section, to bargain collectively is to perform the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or to negotiate an agreement, or any question arising under the agreement, and to execute a written contract, ordinance, or resolution incorporating any agreement reached if requested by either party, but this obligation does not compel either party to agree to a proposal or make a concession.

\* \* \*

(3) Collective bargaining between a public school employer and a bargaining representative of its employees shall not include any of the following subjects:

\* \* \*

(h) Decisions concerning use and staffing of experimental or pilot programs and decisions concerning use of technology to deliver educational programs and services and staffing to provide that technology, or the impact of those decisions on individual employees or the bargaining unit.[1]

\* \* \*

(4) Except as otherwise provided in subsection (3)(f), the matters described in subsection (3) are prohibited subjects of bargaining between a public school employer and a bargaining representative of its employees, and for the purposes of this act, are within the sole authority of the public school employer to decide. [MCL 423.215.]

On appeal, appellant argues that § 15(3)(h), properly interpreted by its plain language, legislative history, and the policy goals of PERA, precludes arbitration of respondent's grievance because Napthen's workload is an "impact" of appellant's decision to implement a pilot program of virtual instruction. Respondent argues that the subject of the grievance was Napthen's entitlement to overage compensation under the CBA, which pertains to the mandatory subject of wages. Respondent states that the overage compensation provision applies generally to all teachers, whether they teach in-person or virtually.

---

[1] MCL 423.215 was amended by 2023 PA 9, to become effective the 91st day after the final adjournment of the 2023 Regular Session. The amendment does not affect Subsection (3)(h).

We agree with MERC's analysis. Section 15(3)(h) provides appellant with broad discretion to make decisions concerning "use and staffing of experimental or pilot programs" and to make decisions "concerning use of technology to deliver educational program and services," but the scope of this prohibited subject does not extend to the issue of wages for teachers who are employed pursuant to the CBA. Overage compensation for teaching more than the threshold number of students is a wage issue, regardless of whether the teacher has traditional in-person classes or virtual online classes.

Appellant argues that overage compensation is within the scope of the § 215(3)(h) prohibition because Napthen's increased workload is an "impact" of the virtual teaching program. We are not persuaded by this argument because there is no indication that Napthen's total number of students increased above the threshold number as a result of the virtual program. The Letter of Understanding did not address a threshold for a teacher's total number of assigned students. It addressed assignments in excess of the normal teacher schedule and limited class size to 50 students.

Next, appellant argues that the Legislature intended to expand the prohibited subjects of bargaining to include the use of pilot programs and technology, and to also include the impact of these decisions. Appellant cites caselaw that purportedly supports its argument that "impact" is a "recognized term of art in labor law" that broadens the scope of the prohibition. First, appellant cites *Metro Council No 23*, 414 Mich 642, in which our Supreme Court considered mandatory subjects of bargaining in the context of a police union CBA that precluded the municipal employer from laying off police officers for lack of funds unless it also made cutbacks and layoffs in other departments. Our Supreme Court held that this provision was not "a mild restriction," but a substantial infringement on the city's discretion to make decisions regarding the size and scope of city services. *Id*. at 660-661. The Court, however, added:

> That is not to say that the union has no interest in these issues. The retaliatory layoff issue can most assuredly be dealt with in a variety of ways. The use of compulsory arbitration, however, to insure no retaliatory layoffs is not justified. Also, while the initial decision to lay off is not a mandatory subject of bargaining, and therefore cannot be compelled in an arbitration award, it is clear that there is a duty to bargain over the *impact* of that decision. Thus, the union has the ability to protect its members after the initial decision has been made. It is one thing to require the city to bargain over the *impact* of its decision to lay off police officers and quite another to permit them to lay off police officers only if layoffs are made in other departments as well. [*Id*. at 661.]

We are not persuaded that *Metro Council No 23* supports a specialized interpretation of "impact." As discussed below, appellant fails to demonstrate that the total number of Napthen's students was an impact of the decision to implement virtual instruction. Nothing in *Metro Council 23* indicates that "impact" should be construed in a manner that establishes a causal connection between the decision and the number of the teacher's students.

Appellant next relies on *Ionia Ed Ass'n*, 311 Mich App at 481-482, in which the union filed an unfair labor practice charge regarding the district's discontinuation of a "bid-bump meeting" procedure for assigning vacant teacher positions. The school district argued that the dispute came

within § 215(3)(j), which prohibits bargaining "[a]ny decision made by the public school employer regarding teacher placement, or the impact of that decision on an individual employee or bargaining unit." This Court interpreted the word "any" as "all-encompassing, meaning 'every' or 'all,' and can be 'used to indicate one selected without restriction' or 'to indicate a maximum or whole.' " *Id.* at 486, quoting *Merriam-Webster's Collegiate Dictionary* (11th ed). It interpreted "decision" to mean " 'the act or process of deciding.' " *Id.* at 486, quoting *Merriam-Webster's Collegiate Dictionary* (11th ed). This Court held that the broad language prohibited bargaining regarding the specific procedures and policies used to place teachers in assignments. *Id*. at 491-492. This Court concluded:

> that the plain meaning of § 15(3)(j) demonstrates the intent of the Legislature to give public school employers discretion regarding a broad spectrum of teacher placement decisions. This broad discretion applies not only to placement decisions themselves, but also to any decision the employer makes in regard to how it decides to go about making those decisions. Any decision regarding teacher placement, which is a prohibited subject of bargaining, cannot be the subject of a CBA. See *Baumgartner v Perry Pub Schs*, 309 Mich App 507, 525; 872 NW2d 837 (2015) (interpreting MCL 423.215(3)(k), which provides that decisions about a school employer's personnel decisions are prohibited subjects of bargaining). There are no cogent reasons for overturning MERC's interpretation of this statute. [*Ionia Ed Ass'n*, 311 Mich App at 492.]

Unlike *Ionia Ed Ass'n*, the issue in this case is whether the district's discretionary procedures for assignments infringed on employees' compensation rights provided under a CBA. Thus, *Ionia Ed Ass'n* is not dispositive.

## 2. IMPROPER DELEGATION

Appellant argues that MERC wrongly delegated to the arbitrator the role of interpreting PERA. In particular, appellant challenges the following portion of MERC's decision:

> It is for an arbitrator, not the Commission, to determine whether the parties intended the 'overage compensation' provisions of Section 7.2.3 to apply to virtual teaching assignments. The Union's grievance rests solely on Section 7.2.3. although the Employer urges that only the Letter of Understanding applies to virtual teaching assignments, the fact remains that if an arbitrator finds Section 7.2.3 inapplicable to teachers who are teaching through a virtual platform, then the Union's grievance will be denied, and the Employer will be relieved of any contractual obligation to pay the compensation sought.

Appellant states that "for an arbitrator to make such a determination, the arbitrator would necessarily have to interpret" § 15(3)(h) of PERA to determine whether the prohibited subject of bargaining makes the CBA unenforceable as applied to the virtual teaching program. When employment disputes implicate statutory rights, MERC cannot delegate the resolution of the dispute to the arbitrator. *Bay City Sch Dist v Bay City Ed Ass'n, Inc*, 425 Mich 426, 436; 390 NW2d 159 (1986). The issue of how § 7.2.3 of the CBA applies to teachers of virtual programs, however, involves a question of contract interpretation, not statutory interpretation. Respondent

does not claim the right to infringe on appellant's decisions regarding use of technology to serve students. Rather, it asserts the right of teachers in the virtual program to receive overage compensation as provided by the CBA. Therefore, this argument is without merit.

### 3. DILUTION OF MANAGEMENT RIGHTS

Appellant also argues that respondent's pursuit of overage compensation for virtual instruction could dilute appellant's management rights under § 15(3)(h). Appellant offers examples such as interference with scheduling of virtual classes. However, the instant case raises the narrow issue whether a teacher teaching more than the threshold number of students in virtual classes is entitled to overage compensation, which comes within the mandatory bargaining subject of wages. Recognizing that the grievance at issue concerns a mandatory subject of bargaining, namely wages, will not prevent MERC or this Court from enforcing § 15(3)(h) if a teachers' union attempts to pursue a grievance that involves a prohibited subject of bargaining.

### 4. CONCLUSION

In sum, MERC did not err by deciding this issue in respondent's favor. Whether § 7.2.3 of the CBA requires appellant to pay overage compensation to teachers of virtual classes is not a prohibited subject of bargaining. The grievance is therefore arbitrable. Demanding arbitration is not an unfair labor practice.

### III. ADMINISTRATIVE PROCEDURES ACT

### A. STANDARD OF REVIEW

Appellant argues that MERC's decision is invalid under the Administrative Procedures Act (APA), MCL 24.201 *et seq.*, because it issued the decision while a seat on the commission was vacant. Appellant did not raise this issue in the MERC proceedings. In civil cases, Michigan follows "the 'raise or waive' rule of appellate review." *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008). Under the raise-or-waive rule set forth by our Supreme Court in *Walters*, a litigant waives review of an issue by failing to timely raise that issue in the trial court. *Id.* Nevertheless, this Court may exercise its discretion to review a waived issue under limited circumstances, including when the argument is necessary for a proper determination of the case and involves a question of law that may be determined on the existing facts. *Smith v Foerster-Bolser Const, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006). Here, as the issue is one concerning the interpretation and application of a statute to undisputed facts, review of the issue is permissible. As noted above, we review de novo questions involving the proper application and interpretation of statutes. *Makowski*, 495 Mich at 470.

### B. ANALYSIS

Under the APA, this Court "shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced" because the decision violates a constitution or a statute, or the decision is made in excess of the agency's statutory authority or jurisdiction. MCL 24.306(1)(a)–(b). "The court as appropriate, may affirm, reverse or modify the decision or order or remand the case for further proceedings." MCL 24.306(2).

MERC "consists of 3 commissioners appointed by the governor, with the advice and consent of the senate." MCL 423.3. "A vacancy in the board shall not impair the right of the remaining commissioners to exercise all the powers of the commission. Two commissioners shall at all times constitute a quorum; but official orders shall require concurrence of a majority of the commission." MCL 423.4. Appellant states that MERC issued the June 17, 2022 decision and order nearly one year after Commissioner Bob LaBrant's term expired on June 30, 2021, thereby creating a vacancy on the Commission. Appellant acknowledges that a vacancy alone does not deprive the remaining commissioners of their right to exercise MERC's authority, and it does not dispute that the remaining commissioners both concurred in the MERC's final decision and order in this case. It argues, however, that because the former commissioner's position remained vacant for almost a year, the vacancy effectively rendered MCL 423.3's three-member requirement a nullity.

Although courts "should avoid a construction that would render any part of the statute surplusage or nugatory," *PNC Nat'l Bank Ass'n v Dep't of Treasury*, 285 Mich App 504, 506; 778 NW2d 282 (2009) (quotation marks and citation omitted), an indefinitely long vacancy does not ignore any part of MCL 423.3. Appellant's argument reads into the statutes conditions and limits that are not supported by the statutory language. By inferring an "expiration period" for MERC's authority after a vacancy, appellant violates the principle of statutory interpretation that "nothing may be read into a statute that is not within the manifest intent of the Legislature as derived from the act itself." *Mich Ed Ass'n v Secretary of State*, 489 Mich 194, 218; 801 NW2d 35 (2011) (quotation marks and citation omitted). Accordingly, we reject this claim of error.

Affirmed.

/s/ Michael F. Gadola
/s/ Michael J. Kelly
/s/ Brock A. Swartzle