# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

RYAN SCOTT FEELEY,

      Defendant-Appellee.

FOR PUBLICATION
September 15, 2015
9:15 a.m.

No. 325802
Livingston Circuit Court
LC No. 14-022259-AR

Before: SAWYER, P.J., and M. J. KELLY and SHAPIRO, JJ.

SHAPIRO, J.

Defendant was arrested and charged with resisting and obstructing a police officer, MCL 750.81d, for failing to comply with the command of a Brighton reserve police officer. At the conclusion of the preliminary hearing, the district court denied the prosecution's bindover request on the grounds that failure to comply with the command of a reserve police officer was not within the scope of the statute. The prosecution appealed by right to the circuit court which affirmed and the prosecution appealed to this Court by leave granted.[1] We affirm.[2]

The resisting and obstructing statute, MCL 750.81d, states:

> (1) Except as provided in subsections (2), (3), and (4), an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a *person* who the individual knows or has reason to know is performing his or her duties is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.

\* \* \*

---

[1] *People v Feeley*, unpublished order of the Court of Appeals, entered April 3, 2015 (Docket No. 325802).

[2] Generally, a district court's decision to bind a defendant over for trial is reviewed for an abuse of discretion. *People v Fletcher*, 260 Mich App 531, 551; 679 NW2d 127 (2004). However, this case involves questions of statutory interpretation, which are reviewed de novo. See *People v Flick*, 487 Mich 1, 8-9; 790 NW2d 295 (2010).

-1-

(7) As used in this section:

(a) "Obstruct" indicates the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command.

(b) *"Person" means any of the following*:

(*i*) A police officer of this state or of a political subdivision of this state including, but not limited to, a motor carrier officer or capitol security officer of the department of state police.

(*ii*) A police officer of a junior college, college, or university who is authorized by the governing board of that junior college, college, or university to enforce state law and the rules and ordinances of that junior college, college, or university.

(*iii*) A conservation officer of the department of natural resources or the department of environmental quality.

(*iv*) A conservation officer of the United States department of the interior.

(*v*) A sheriff or deputy sheriff.

(*vi*) A constable.

(*vii*) A peace officer of a duly authorized police agency of the United States, including, but not limited to, an agent of the secret service or department of justice.

(*viii*) A firefighter.

(*ix*) Any emergency medical service personnel described in section 20950 of the public health code, 1978 PA 368, MCL 333.20950.

(*x*) An individual engaged in a search and rescue operation as that term is defined in section 50c. [Emphasis added.]

The prosecution contends that by implication, reserve police officers fall under subsection (7)(b)(*i*), i.e., "[a] police officer of . . . a political subdivision of this state." When interpreting statutes, we are required to look at the plain language to discern the Legislature's intent. *People v Morey*, 461 Mich 325, 329-330; 603 NW2d 250 (1999). In the resisting and obstructing statute, the Legislature did not include the term "reserve police officer" in the definition of persons whose lawful orders must be obeyed in order to avoid criminal liability. Many other law enforcement personnel one might reasonably consider implicitly included in the term "police officer" were nevertheless explicitly listed in the statute. Had the Legislature intended a broad meaning to apply to the term "police officer," there would have been no need for it to specify the statute's application to, *inter alia*, university police officers, sheriff's deputies, and federal conservation officers. See *People v Jahner*, 433 Mich 490, 500 n 3; 446

NW2d 151 (1989) (holding that a "consistent principle of statutory construction is that the express mention in a statute of one thing implies the exclusion of other similar things (expressio unius est exclusion alterius)"); see also *People v Malik*, 70 Mich App 133, 136; 245 NW2d 434 (1976). That the Legislature pointedly did not include "reserve police officers" indicates that the omission was intentional. See *People v Underwood*, 278 Mich App 334, 338; 750 NW2d 612 (2008) (holding that "provisions not included in a statute by the Legislature should not be included by the courts."); see also *Houghton Lake Area Tourism & Convention Bureau v Wood*, 255 Mich App 127, 135; 662 NW2d 758 (2003) (holding that this Court should assume that omissions by the Legislature are intentional). Thus, by its terms, the statute does not apply to the failure to obey the order of a reserve police officer.[3]

The cases relied upon by the prosecution are inapposite. In *People v McRae*, 469 Mich 704, 711-715; 678 NW2d 425 (2004), the Supreme Court held that a reserve police officer was a "state actor" for Fourth Amendment purposes. The case involved applying constitutional standards. There is no basis to conclude that because a reserve police officer has been held to be a state actor under certain circumstances that he is also a "police officer" for purposes of the resisting and obstructing statute. Indeed, a completely private citizen may be held to be a state actor for Fourth Amendment purposes. *Id*. at 711. The term "state action" is broad and of no application here; for example, a public university and its employees are generally state actors, but no one could argue that, by virtue of that legal classification, they are also "police officers" for purposes of the crime of resisting and obstructing.

In *Bitterman v Village of Oakley*, 309 Mich App 53; ___ NW2d ___ (2015), this Court considered whether information concerning reserve police officers fell within the "law enforcement exception" to disclosure under the Freedom of Information Act (FOIA), MCL 15.231 *et seq*. We reject the prosecution's reliance on *Bitterman* because the term "law enforcement officer, agent, or informant" used in MCL 15.243(1)(s)(*viii*) is undoubtedly broader than the term "police officer." Indeed, as this Court opined, reserve police officers likely fit

---

[3] The dissent asserts that the legislature's decision not to enumerate reserve officers along with these many other categories of officers is of "no significance" and that therefore we should base our decision on the fact that a lay dictionary defines "police force" as a "body of trained officers . . ." In our view, this case does not require resort to a lay dictionary, let alone its definition of a term other than that used in the statute. Moreover, the dissent's reliance on the dictionary's use of the general term "trained officers" is belied by the fact that, by statute, the degree of training required to become a reserve police officer is far less than that required to become a "regularly employed" police officer, see MCL 28.602(c), and may vary from one municipality to another. We also decline to adopt the dissent's view that the difference between police officers and reserve officers "is not in the nature of their service . . . but in the nature of their schedule." The dissent cites no law in support of this conclusion and it is factually incorrect since, at least in the department in question, a reserve officer may not exercise any authority unless accompanied by a certified, full-time police officer. Finally, we reject the dissent's suggestion that this analysis would differ depending on whether a county or municipality has separate police and fire departments or uses a unified public safety department.

within the FOIA term. *Bitterman*, slip op at 9. The term "police officer" in the resisting and obstructing statute is markedly narrower. If the Legislature had intended "police officer" as used in the statute to be read so broadly, it would not have needed to include a lengthy list of law enforcement professionals (and firefighters, etc.) to whom the law applies, notably omitting reserve police officers.

The prosecution and the dissent make reasonable policy arguments in support of their view that the failure to obey a properly supervised reserve police officer should result in some level of criminal liability. However, the decision whether to criminalize such actions and, if so, what sanctions to impose, is a matter reserved for the Legislature. See *People v Ayers*, 213 Mich App 708, 716; 540 NW2d 791 (1995) ("[T]he power to define crime and fix punishment is wholly legislative[.]").

Affirmed.


/s/ Douglas B. Shapiro
/s/ Michael J. Kelly