# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Corbin R. Davis

## PEOPLE v FEELEY

Docket No. 152534. Argued on application for leave to appeal May 4, 2016. Decided June 29, 2016.

Defendant Ryan Scott Feeley was charged with resisting and obstructing after he ran from a reserve police officer and then failed to comply with the reserve police officer's order to stop. The 53rd District Court, Carol Sue Reader, J., refused to bind defendant over for trial on the charge of resisting and obstructing because the court concluded that the reserve police officer's stop of defendant was unlawful. The incident giving rise to this case occurred at a bar after the police were called to assist with an intoxicated person there. The reserve police officer and a full-time police officer responded. According to the reserve police officer, the reserve police officer asked to speak with defendant, who was identified on the scene by defendant's wife as the troublemaker, and defendant turned and ran away. The reserve police officer testified that he gave chase, identified himself as a police officer, and ordered defendant to stop. The reserve police officer added that defendant stopped after the reserve police officer's second command, looked at the reserve police officer, swore, and began reaching behind his back. The reserve police officer testified that he pulled his weapon and ordered defendant to the ground at that point. Defendant complied and was taken into custody. The prosecution filed in the circuit court an application for leave to appeal the district court's decision not to bind defendant over for trial. The Livingston Circuit Court, Michael P. Hatty, J., denied the application for lack of merit. The prosecution appealed by leave granted in the Court of Appeals. The Court, SHAPIRO and M. J. KELLY, JJ., (SAWYER, P.J., dissenting), affirmed. 312 Mich App 320 (2015). SHAPIRO and M. J. KELLY, JJ., concluded that reserve police officers were not among the persons described in MCL 750.81d. SAWYER, P.J., dissented, stating that reserve police officers were within the scope of persons contemplated by MCL 750.81d. The prosecution filed an application for leave to appeal in the Supreme Court. The Supreme Court heard arguments on the application on May 4, 2016.

In a unanimous opinion by Justice BERNSTEIN, the Supreme Court *held*:

The Court of Appeals incorrectly concluded that a reserve police officer is not among the persons contemplated in MCL 750.81d, the statute prohibiting an individual from resisting or obstructing the persons specified in the statute. Police officers are expressly listed in MCL 750.81d(7)(b)(*i*) as an occupation to which the prohibition against resisting and obstructing

applies, and "reserve police officers" are a subset of "police officers." "Reserve police officers" are thus "police officers" for purposes of the resisting and obstructing statute.

MCL 750.81d penalizes an individual for resisting or obstructing a person described in the list in MCL 750.81d(7)(b), if the individual knows, or has reason to know, that the person is performing his or her duties. "Reserve police officer" is not specified on the list. According to the Court of Appeals, if the Legislature had intended to penalize a defendant's resistance to, or obstruction of, a reserve police officer's performance of his or her duties, the Legislature would have included reserve police officers in the statutory list. The Supreme Court disagreed with the Court of Appeals that the express mention of one thing in a statute requires the exclusion of another similar thing. Rather, the Supreme Court concluded that the lack of a particular definition of "police officer" in MCL 750.81d and the statute's use of the phrase, "including, but not limited to," meant that the Legislature intended an expansive and inclusive reading of the term "police officer." Additionally, the Legislature has adopted explicit restrictions to the definition of "police officer" in statutes addressing other matters, and it is significant that no such restriction to the definition of "police officer" was expressed in MCL 750.81d. The Supreme Court also declined to read MCL 750.81d *in pari materia* with other statutes defining "police officer." Statutes are read *in pari materia* when they deal with the same subject or share a common purpose. MCL 750.81d does not address the same subject or share a common purpose with other statutes defining "police officer," such as the statutory provisions known as the Michigan Commission on Law Enforcement Standards Act (MCOLES). Having determined that "reserve police officers" are a subset of "police officers" for purposes of MCL 750.81d, the Supreme Court reversed the Court of Appeals, and it remanded the matter to the Court of Appeals to determine whether defendant knew or had reason to know that the reserve police officer was performing his duties at the time of defendant's charged conduct, and if so, whether the reserve police officer's command to stop was lawful.

Reversed and remanded to the Court of Appeals.

©2016 State of Michigan

# OPINION

Chief Justice:          Justices:
Robert P. Young, Jr.    Stephen J. Markman
                        Brian K. Zahra
                        Bridget M. McCormack
                        David F. Viviano
                        Richard H. Bernstein
                        Joan L. Larsen

FILED  June 29, 2016

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellant,

v                                                     No. 152534

RYAN SCOTT FEELEY,

     Defendant-Appellee.

BEFORE THE ENTIRE BENCH

BERNSTEIN, J.

At issue in this case is whether the term "police officer" in MCL 750.81d(7)(b)(*i*) encompasses reserve police officers. We reverse the Court of Appeals' ruling that reserve police officers are not police officers for purposes of MCL 750.81d(7)(b)(*i*), and we remand to the Court of Appeals to address whether the district court correctly ruled that the reserve police officer in this case lacked the authority to conduct a stop of defendant.

# I. FACTS AND PROCEDURAL HISTORY

In the early morning hours of May 5, 2014, a ruckus at a Brighton bar resulted in a call to the police. Two officers from the Brighton Police Department responded: Christopher Parks, a full-time police officer, and Douglas Roberts, a reserve police officer. At the time of the incident, Roberts had worked as a reserve police officer for six years. Roberts had been sworn in as a reserve police officer after a 16-week police training program. He was assigned a uniform, a patrol car, and a gun. Roberts worked full 12-hour shifts alongside a full-time police officer about two or three times a month, filling in for officers on sick leave or vacation. He was not certified by the Michigan Commission on Law Enforcement Standards (MCOLES), which is required of full-time police officers under the MCOLES Act, MCL 28.601 *et seq*.

At the preliminary examination, Roberts testified that he and Parks arrived at the bar in a fully marked police vehicle. Roberts was dressed in a uniform, which Roberts described as "[b]lue pants, blue police shirt marked on the sleeves, and a[n] outside carrier vest that has [a] badge, name tag and any insignias on it." Roberts also testified that he was carrying a weapon. Roberts recalled that as the two officers approached a small crowd outside the bar, a woman informed Roberts that the troublemaker was her intoxicated husband, defendant Ryan Scott Feeley. Roberts further testified that he approached defendant and asked him to stand aside, at which point defendant ran away from Roberts. Roberts chased defendant, yelling "police officer, stop." Roberts added that he repeated his command after running about a block, and defendant slowed down. According to Roberts, defendant "turned and squared off," swore at Roberts, and "took

his right arm and reached behind his back." Roberts testified that in fear for his safety, he drew his gun and ordered defendant to the ground.

Defendant was arrested and charged with resisting and obstructing a police officer under MCL 750.81d. Defendant objected to the prosecution's request for a bindover, arguing that (1) Roberts did not have an articulable suspicion for stopping defendant in the first place, and (2) defendant could not be held criminally liable for resisting and obstructing under MCL 750.81d because Roberts, being a reserve police officer, was not a "police officer" within the meaning of that statute.

On August 29, 2014, the district court issued an opinion and order denying the prosecution's request for a bindover. *People v Feeley*, opinion and order of the Livingston County Trial Court-District Court Division, issued August 29, 2014 (Case No. 14-1183 FY). The district court determined that "Roberts was not a police officer as provided by statutory language, legislative intent, training requirements, proper oath administration, and written instrument requirements." *Id*. at 5. The district court also concluded sua sponte that the stop of defendant was unlawful and invalid because Roberts "lacked the authority to make a stop of a person." *Id*. at 8.[1] The prosecution appealed in the circuit court. On January 13, 2015, the circuit court denied the prosecution's application for leave to appeal for lack of merit in the grounds presented.

---

[1] Treating Roberts as a "special deputy" under MCL 51.70, which requires an instrument in writing signed by the Sheriff, the district court found that the lack of such a written instrument precluded Roberts from making a stop of an individual. *Id*. We find this analysis puzzling as Roberts is a member of the Brighton Police Department rather than the Livingston County Sheriff Department. However, we recognize that there may be other grounds on which to reach the conclusion that Roberts lacked the authority to conduct a stop of defendant.

3

The prosecution appealed in the Court of Appeals. On September 15, 2015, the Court of Appeals affirmed the district court in a split, published opinion. *People v Feeley*, 312 Mich App 320; 876 NW2d 847 (2015). In affirming the district court's denial of the prosecution's bindover request, the Court of Appeals' majority concluded that a reserve police officer did not fall within the scope of a "police officer" as used in MCL 750.81d(7)(b)(*i*). Pointing to the Legislature's explicit mention of other types of law enforcement personnel, the majority assigned great significance to the omission of the term "reserve police officer" from the statute's enumerated list. To the contrary, the dissent found no significance in the omission of the term "reserve police officer" from MCL 750.81d(7)(b) and would have concluded that Roberts was a police officer of a political subdivision of this state, namely the City of Brighton. The Court of Appeals did not address the district court's ruling that Roberts lacked the authority to stop defendant.

The prosecution appealed, arguing that the term "police officer" in MCL 750.81d(7)(b)(*i*) encompasses reserve police officers. This Court ordered oral argument on whether to grant the application or take other action. We directed the parties to address whether the term "police officer" in MCL 750.81d(7)(b)(*i*) encompasses reserve police officers. *People v Feeley*, 498 Mich 969 (2016).

## II. STANDARD OF REVIEW

A district court's decision regarding a bindover is reviewed for an abuse of discretion, and "[a court] necessarily abuses its discretion when it makes an error of law." *People v Waterstone*, 296 Mich App 121, 131-132; 818 NW2d 432 (2012). Statutory

4

construction is a question of law that is reviewed de novo. *People v Morey*, 461 Mich 325, 329; 603 NW2d 250 (1999).

## III. ANALYSIS AND APPLICATION

In reviewing questions of statutory construction, our purpose is to discern and give effect to the Legislature's intent. *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999). We begin by examining the plain language of the statute. *Id*. "If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written. No further judicial construction is required or permitted." *Id*. "The law is not properly read as a whole when its words and provisions are isolated and given meanings that are independent of the rest of its provisions." *Mayor of the City of Lansing v Pub Serv Comm*, 470 Mich 154, 168; 680 NW2d 840 (2004).

The resisting and obstructing statute, MCL 750.81d, provides in relevant part:

(1)     Except as provided in subsections (2), (3), and (4), an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a *person who the individual knows or has reason to know is performing his or her duties* is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.

\* \* \*

(7)     As used in this section:

(a)     "Obstruct" includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command.

(b)     "Person" means any of the following:

5

(*i*) *A police officer of this state or of a political subdivision of this state including, but not limited to, a motor carrier officer or capitol security officer of the department of state police.*

(*ii*) A police officer of a junior college, college, or university who is authorized by the governing board of that junior college, college, or university to enforce state law and the rules and ordinances of that junior college, college, or university.

(*iii*) A conservation officer of the department of natural resources or the department of environmental quality.

(*iv*) A conservation officer of the United States department of the interior.

(*v*) A sheriff or deputy sheriff.

(*vi*) A constable.

(*vii*) A peace officer of a duly authorized police agency of the United States, including, but not limited to, an agent of the secret service or department of justice.

(*viii*) A firefighter.

(*ix*) Any emergency medical service personnel described in section 20950 of the public health code, 1978 PA 368, MCL 333.20950.

(*x*) An individual engaged in a search and rescue operation as that term is defined in section 50c. [Emphasis added.]

Put simply, an individual is guilty of resisting or obstructing if he "resists [or] obstructs . . . a person who the individual knows or has reason to know is performing his or her duties . . . ." MCL 750.81d(1). To "obstruct" includes "a knowing failure to comply with a lawful command." MCL 750.81d(7)(a).[2] A "person" in this context

_____

[2] "Obstruct" is the only verb defined in MCL 750.81d(7). None of the other verbs used in MCL 750.81d(1) to describe punishable conduct are defined in MCL 750.81d.

6

includes "[a] police officer of this state or of a political subdivision of this state . . . ." MCL 750.81d(7)(b)(*i*).

Defendant claims that a reserve police officer is not a "police officer" under MCL 750.81d(7)(b)(*i*). We disagree. The plain language of the statute does not explicitly distinguish reserve police officers from police officers, nor does the statute provide any indication that the two should be treated differently. Rather, we find that, for purposes of MCL 750.81d(7)(b)(*i*), reserve police officers are a subset of police officers.

First, we note that the statute does not define the term "police officer." "All words and phrases shall be construed and understood according to the common and approved usage of the language[.]" MCL 8.3a. "If a statute does not define a word, it is appropriate to consult dictionary definitions to determine the plain and ordinary meaning of the word." *Epps v 4 Quarters Restoration LLC*, 498 Mich 518, 529; 872 NW2d 412 (2015), citing *Allison v AEW Capital Mgt*, *LLP*, 481 Mich 419, 427; 751 NW2d 8 (2008). The dictionary definition of the term "police officer" supports the interpretation that reserve police officers are police officers under MCL 750.81d(7)(b)(*i*). *Merriam-Webster's Collegiate Dictionary* (11th ed) defines "police officer" as "a member of a police force," and the term "police force" as "a body of trained officers entrusted by a government with maintenance of public peace and order, enforcement of laws, and prevention and detection of crime." This suggests that a police officer is a member who is (1) trained and (2) entrusted by a government to (3) maintain public peace and order, enforce laws, and prevent and detect crime. Roberts was trained in a 16-week police training program. After completing the training program, Roberts was sworn in as a

reserve police officer.[3] As part of his oath, he pledged to serve the people of the City of Brighton and to uphold the United States Constitution and the laws of the state and the city. After being sworn in, the Brighton Police Department allowed Roberts to wear a police uniform, along with a badge and insignias, and to carry a weapon. The City of Brighton entrusted Roberts to work alongside a full-time officer for the common goals of maintaining peace and order, enforcing laws, and preventing and detecting crime. Thus, he is properly considered a police officer under the common meaning of the term.[4]

In addition, the Legislature's use of the phrase, "including, but not limited to," in MCL 750.81d(7)(b)(*i*) indicates that it intended an expansive and inclusive reading of the term "police officer." We have held that this particular phrase is not "one of limitation," but is instead meant to be illustrative and "purposefully capable of enlargement." *In re Forfeiture of $5,264*, 432 Mich 242, 255; 439 NW2d 246 (1989), citing *Skillman v Abruzzo*, 352 Mich 29, 33-34; 88 NW2d 420 (1958). Accordingly, by using this phrase, the Legislature expressly indicated its intention not to limit a definition to listed

---

[3] Roberts testified that the procedure of being sworn in to serve as a reserve police officer in Brighton was similar to the way he was previously sworn in to serve in the Hamburg Township Police Department.

[4] We do not find it necessary to turn to *People v McRae*, 469 Mich 704; 678 NW2d 425 (2004), or *Bitterman v Village of Oakley*, 309 Mich App 53; 868 NW2d 642 (2015), which were addressed by the Court of Appeals, for our interpretation of the term "police officer" under MCL 750.81d(7)(b)(*i*) as including reserve police officers. Those cases addressed the status of reserve police officers in contexts different from the one at issue. *McRae* considered a reserve officer's status as a "state actor" for purposes of a defendant's Sixth Amendment right to counsel, *McRae*, 469 Mich at 718, and *Bitterman* considered the status of reserve police officers for purposes of a Freedom of Information Act exemption, *Bitterman*, 309 Mich App at 70.

examples. This interpretation undermines the Court of Appeals' reliance on the doctrine of *expressio unius est exclusio alterius*, which provides that "the express mention in a statute of one thing implies the exclusion of other similar things." *People v Jahner*, 433 Mich 490, 500 n 3; 446 NW2d 151 (1989). While MCL 750.81d(7)(b) does not expressly mention reserve police officers in its enumerated list of "[p]erson[s]," the plainly stated breadth of the definition of "police officer" in MCL 750.81d(7)(b)(*i*) eliminates any need to do so, or any implication that this omission should be read as an intended exclusion.

Defendant's argument that reserve police officers should be treated differently than regular police officers because of certain factual distinctions also falls short. We acknowledge that Roberts, a reserve officer, differs from regular full-time officers in the following respects: (1) he is not a full-time employee, (2) he is required to be accompanied by a full-time officer, and (3) he is not certified under MCOLES. However, these distinctions are not recognized by the plain language of the statute and do not form a sufficient basis to exclude reserve police officers like Roberts from the scope of the term "police officer" in MCL 750.81d. We do not read requirements into a statute where none appear in the plain language and the statute is unambiguous. See *Sun Valley*, 460 Mich at 236. "It is not within the province of this Court to read therein a mandate that the [L]egislature has not seen fit to incorporate." *Jones v Grand Ledge Public Schools*, 349 Mich 1, 11; 84 NW2d 327 (1957). MCL 750.81d(7)(b)(*i*) does not define a police officer by referring to a particular work arrangement or level of certification. No reference is made in the statute regarding whether a police officer must work full-time, must be capable of working individually, or must be MCOLES-certified. As previously noted,

9

the statute does not define the term "police officer" at all, and the commonly understood meaning of the term contains no such requirements. Because the plain language of the statute is unambiguous, we decline to read these requirements into it.

The Legislature has demonstrated its ability to adopt explicit restrictions to the definition of a "police officer" when such restrictions are intended. For example, the MCOLES Act itself limits its definition of "police officer" to "[a] *regularly employed* member of a law enforcement agency authorized and established by law, including common law, who is responsible for the prevention and detection of crime and the enforcement of the general criminal laws of this state." MCL 28.602(*l*)(*i*) (emphasis added). This language indicates that the Legislature is capable of limiting the definition of a police officer based on employment status when such a limitation is intended; the Legislature chose, however, to impose no such restriction in MCL 750.81d(7)(b).

The requirement that a reserve police officer must be accompanied by a full-time officer might be taken to imply that a reserve police officer's independent authority to give a lawful command is limited, absent the authority provided by the accompaniment of a full-time officer. However, even if such a limitation exists, it does not exclude reserve officers from being considered police officers within the meaning of the statute. MCL 750.81d(7)(b)(*i*) is silent with regard to the nature of a police officer's authority or the restrictions imposed on an officer's performance of his or her duties. Thus, there is no basis to read into MCL 750.81d a requirement that independent authority to give a lawful command to stop must exist as a prerequisite to being considered a police officer. Moreover, the explicit inclusion of motor carrier officers and capitol security officers in MCL 750.81d(7)(b)(*i*) suggests that individuals with limited authority may still be

10

considered police officers. Motor carrier officers have only the authority to "enforc[e] the general laws of this state as they pertain to commercial vehicles." MCL 28.6d(1). The authority of capitol security officers is limited to "the protection of state owned or leased, property or facilities, in the city of Lansing, and in Windsor township of Eaton county." MCL 28.6c(1). As MCL 750.81d(7)(b)(*i*) makes clear, however, these officers nonetheless constitute "police officer[s]" for purposes of the resisting and obstructing statute, despite the limitations on the scope of their authority. We see no reason why any purported limitation on Roberts's authority should lead to a different result. Whether a full-time officer was present when Roberts commanded that defendant stop simply does not speak to whether Roberts was a "police officer" in the first place.

It is similarly clear that the Legislature did not intend to limit the term "police officer" in MCL 750.81d(7)(b)(*i*) to those officers required to possess MCOLES certification. Again, the Legislature has repeatedly shown that it knows how to impose such a requirement when it is intended. For instance, MCL 28.421(1)(h) defines "peace officer" as

> an individual who is employed as a law enforcement officer, *as that term is defined under section 2 of the commission on law enforcement standards act, . . . MCL 28.602*, by this state or another state, a political subdivision of this state or another state, or the United States, and who is required to carry a firearm in the course of his or her duties as a law enforcement officer. [Emphasis added.]

Similarly, the definition of "law enforcement official" in MCL 763.7(c)(*i*) includes "[a] police officer of this state or a political subdivision of this state as defined in section 2 of the commission on law enforcement standards act, . . . MCL 28.602." MCL 750.81d(7)(b), however, contains no such language or reference to the MCOLES Act. To

11

the contrary, the only officers expressly identified as "police officer[s]" under MCL 750.81d(7)(b)(*i*)—motor carrier officers and capitol security officers—are not required to be certified under the MCOLES Act. Thus, there is no basis to conclude that the Legislature intended to incorporate the MCOLES Act's definitions or requirements into the resisting and obstructing statute.

The Legislature's reference in MCL 750.81d(7)(b) to definitions from other statutes further supports this conclusion. MCL 750.81d(7)(b)(*ix*) refers to "[a]ny emergency medical service personnel described in . . . MCL 333.20950," and MCL 750.81d(7)(b)(*x*) refers to "[a]n individual engaged in a search and rescue operation as that term is defined in [MCL 750.50c]." Defendant urges us to likewise define "police officer" under MCL 750.81d(7)(b)(*i*) according to the terms of the MCOLES Act, which expressly exclude "a member of . . . a police auxiliary temporarily performing his or her duty under the direction of the sheriff or police department[.]" See MCL 28.609(1). Had the Legislature intended to incorporate this definition, it could have done so simply by referring to the MCOLES Act in the text of MCL 750.81d(7)(b)(*i*). It did not.

Therefore, the plain language of MCL 750.81d(7)(b)(*i*) dictates that, whatever distinctions may exist between a full-time police officer and a reserve police officer such as Roberts, both are considered "[a] police officer" as that term is used in MCL 750.81d(7)(b)(*i*). This interpretation is consistent with the legislative purpose behind the enactment of MCL 750.81d, "to protect persons in all professions connected to law enforcement instead of only peace officers." *People v Moreno*, 491 Mich 38, 53 n 39; 814 NW2d 624 (2012). That a wide variety of professions is represented on the list serves to reflect this goal. See MCL 750.81d(7)(b)(*i*)-(*x*) (providing that protected

12

persons include state and local police officers, college police officers, conservation officers, sheriffs or deputy sheriffs, constables, secret service agents, Department of Justice agents, firefighters, emergency medical service personnel, and individuals engaged in search and rescue operations).  Acknowledging that reserve police officers belong in this group of protected professionals is consistent with the aforementioned legislative purpose.

Defendant further asserts that the resisting and obstructing statute and the MCOLES Act should be read *in pari materia*.  Defendant argues that in applying this doctrine, the narrower definition of police officer used in the MCOLES Act should be employed when parsing MCL 750.81d(7)(b)(*i*) to conclude that the term "police officer" does not include reserve police officers.  We do not find this argument convincing.

As we explained in *People v Mazur*, 497 Mich 302, 313; 872 NW2d 201 (2015):

> Under the doctrine [of *in pari materia*], statutes that relate to the same subject or that share a common purpose should, if possible, be read together to create a harmonious body of law.  An act that incidentally refers to the same subject is not *in pari materia* if its scope and aim are distinct and unconnected.  [Citation omitted.]

In this case, the resisting and obstructing statute and the MCOLES Act do not deal with the "same subject or share a common purpose."  *Id*.  The resisting and obstructing statute is designed to "protect officers from physical harm."  *People v Vasquez*, 465 Mich 83, 92; 631 NW2d 711 (2001) (opinion by MARKMAN, J.).  Even more broadly, the Penal Code, which encompasses the resisting and obstructing statute, purports "to . . . define crimes and prescribe the penalties and remedies . . . ."  MCL 750.1.  In contrast, the MCOLES Act is:

13

An Act to provide for the creation of the commission on law enforcement standards; to prescribe its membership, powers, and duties; to prescribe the reporting responsibilities of certain state and local agencies; to provide for additional costs in criminal cases; to provide for the establishment of the law enforcement officers training fund; and to provide for disbursement of allocations from the law enforcement officers training fund to local agencies of government participating in a police training program. [MCL 28.601.]

These differences advise against reading the statutes *in pari materia*.

The MCOLES Act itself also suggests that its definitions cannot be exported to other contexts, because the definitions in MCL 28.602 are introduced with the phrase, "[a]s used in this act[.]" MCL 28.602. When statutes do not deal with the same subject or share a common purpose, and the Legislature has chosen to specifically limit the applicability of a statutory definition, the doctrine of *in pari materia* is inapplicable. See *Mazur*, 497 Mich at 314-315.

## IV. CONCLUSION

We conclude that the Court of Appeals erred by finding that the term "police officer" in MCL 750.81d(7)(b)(*i*) does not encompass reserve police officers. Therefore, we reverse the Court of Appeals' holding regarding the scope of the term "police officer." Because the Court of Appeals did not address whether the district court correctly concluded that Roberts lacked the authority to conduct a stop of defendant, we remand this case to the Court of Appeals to address that issue, including whether defendant knew or had reason to know that Roberts was performing his duties at the time

of defendant's charged conduct,[5] and, if so, whether Robert's command to stop was lawful.[6] We do not retain jurisdiction.

Richard H. Bernstein
Robert P. Young, Jr.
Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Joan L. Larsen

---

[5] "[A]n individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual *knows or has reason to know is performing his or her duties* is guilty of a felony . . . ."  MCL 750.81d(1) (emphasis added).

[6] " 'Obstruct' includes the use or threatened use of physical interference or force or a knowing failure to comply *with a lawful command*."  MCL 750.81d(7)(a) (emphasis added).