*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DANIEL CARL LIDSTER, JR.,

      Defendant-Appellant.

UNPUBLISHED
August 13, 2025
11:13 AM

No. 367712
Kalkaska Circuit Court
LC No. 2022-004731-FH

Before: K. F. KELLY, P.J., and MARIANI and ACKERMAN, JJ.

PER CURIAM.

Defendant appeals his jury convictions for two counts of assaulting, resisting, or obstructing a police officer, MCL 750.81d(1). He was sentenced as a fourth-offense habitual offender, MCL 769.12, to 2 to 15 years' imprisonment for each count. On appeal, he challenges the sufficiency of the evidence supporting his convictions. We affirm.

## I. BACKGROUND

On the evening of May 12, 2022, Kalkaska County Sheriff's Deputy Mackenzie Hall responded to a residence in Rapid City to investigate a reported domestic violence incident. Upon arriving, he parked at the end of the driveway and exited his patrol vehicle. Although it was dark, the area was illuminated by his flashlight and vehicle headlights.

Deputy Hall encountered defendant in the driveway. He greeted defendant by name—which he knew from several previous encounters—and stated that he "heard there was something going on" at the home. Defendant immediately placed his hands behind his back near his waistband and told the deputy to "back the fuck up." Concerned that defendant might be armed, Deputy Hall ordered him to show his hands, but defendant refused. When the deputy explained that he was responding to a report of a possible assault, defendant replied, "There ain't no fucking assault." Asked what he had behind his back, defendant responded, "Don't worry about it. It's a magic trick, mother fucker."

Sergeant Kyle Beaver arrived approximately 45 seconds after Deputy Hall and found the deputy standing in front of his patrol vehicle while defendant continued refusing to comply with

the deputy's commands. Sergeant Beaver ordered defendant to show his hands and get on his knees. Defendant responded, "I don't give a fuck what you say, homeboy, or the flashlight you got on me." Deputy Hall unholstered his taser and warned that he would use it if defendant failed to comply. Defendant remained noncompliant and began moving his arms erratically behind his back, appearing to taunt the officers.

Due to defendant's noncompliance, Sergeant Beaver approached defendant from behind and tackled him to the ground. During the ensuing struggle, defendant resisted the officers' attempts to handcuff him and elbowed Deputy Hall in the face, causing a bloody nose. After several minutes, the officers subdued defendant and placed him in handcuffs. He was subsequently charged with one count of assaulting, resisting, or obstructing a police officer as to each officer.

At trial, both officers testified about the incident, and body camera footage of the altercation was admitted and played for the jury. Defendant testified in his own defense. He admitted that he had not complied with the officers' commands but claimed he did not realize they were police officers, believing instead that they were neighbors known to drive decommissioned police vehicles and impersonate officers as a joke. According to defendant, the officers never verbally identified themselves, and he was unable to see their marked vehicles because the headlights were directed at him, obstructing his view. He claimed that he would have complied had he known they were law enforcement.

The jury rejected defendant's account and convicted him as charged. The trial court sentenced him as described above. He now appeals.

## II. DISCUSSION

Defendant challenges the sufficiency of the evidence supporting his convictions under MCL 750.81d(1). We review such challenges de novo, considering the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Kenny*, 332 Mich App 394, 402-403; 956 NW2d 562 (2020). "[W]hen the lawfulness of police action is an element of a criminal offense, a court reviewing a challenge to the sufficiency of the evidence supporting a conviction must view the facts in the light most favorable to the prosecution and then determine whether, as a matter of law, an officer's actions were 'lawful' in light of those facts." *People v Prude*, 513 Mich 377, 386; 15 NW3d 249 (2024). "Under this test, a conviction will be overturned only when an officer's conduct cannot be reasonably perceived as lawful when viewed under a lens sufficiently deferential to that conduct." *Id.*

In reviewing such challenges, we are "*required* to draw all reasonable inferences and make credibility choices in support of the jury's verdict." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (citation omitted). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Id.* (quotation marks and citation omitted). The prosecution is not required to disprove every reasonable theory of innocence; "it need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *Kenny*, 332 Mich App at 403.

"Due process requires the prosecution to prove every element beyond a reasonable doubt." *People v Smith*, 336 Mich App 297, 308; 970 NW2d 450 (2021) (cleaned up). To sustain a conviction for assaulting, resisting, or obstructing a police officer in violation of MCL 750.81d(1), the prosecution must prove that "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person . . . was a police officer performing his or her official duties." *People v Corr*, 287 Mich App 499, 503; 788 NW2d 860 (2010). And because the enactment of MCL 750.81d did not abrogate the common-law rule that a person may resist an unlawful arrest, the prosecution also "must establish that the officers acted lawfully as an element of resisting or obstructing a police officer under MCL 750.81d." *People v Quinn*, 305 Mich App 484, 491-492; 853 NW2d 383 (2014).

On appeal, defendant challenges the sufficiency of the evidence on two grounds: (1) that he knew or had reason to know that Deputy Hall and Sergeant Beaver were police officers performing their official duties, and (2) that the officers' conduct was lawful. We address each in turn.

## A. KNOWLEDGE

Because of the inherent difficulty in proving a defendant's state of mind, "minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). A conviction for resisting or obstructing under MCL 750.81d(1) does not require proof of actual knowledge; it is sufficient if the evidence shows that the defendant either "knew or had reason to know" that the person resisted or obstructed was a police officer performing official duties. *Corr*, 297 Mich App at 503. "The phrase 'has reason to know' requires the fact-finder to engage in an analysis to determine whether the facts and circumstances indicate that when resisting, defendant had reasonable cause to believe the person he was assaulting was performing his or her duties." *Id*. at 504 (cleaned up).

The evidence presented here was sufficient to establish that defendant knew or had reason to know that Deputy Hall and Sergeant Beaver were police officers performing their official duties. Both officers arrived in marked patrol vehicles and wore full police uniforms. The headlights from Deputy Hall's patrol vehicle illuminated the driveway, and he stood in front of those lights while interacting with defendant. Although neither officer expressly identified himself as law enforcement, Deputy Hall repeatedly stated that he was responding to a call about a potential assault and warned that he would use a taser if defendant did not show his hands—clear indications that he was acting as a police officer. During the struggle, both officers stated that defendant was under arrest, and Sergeant Beaver can be heard communicating with dispatch over his radio.

Moreover, both officers testified that they had interacted with defendant on multiple prior occasions in their official capacities. Deputy Hall had encountered defendant five times before the night in question, including once when he took a complaint from him. Sergeant Beaver had interacted with defendant at least once in the six months preceding the incident and at least nine other times in the last four years. That defendant had been involved in more than a dozen prior encounters with these specific officers while they were acting as law enforcement supports the

conclusion that he knew or had reason to know who they were and in what capacity they were acting.

Taken together, the facts and circumstances presented at trial gave defendant ample reason to know that Deputy Hall and Sergeant Beaver were police officers performing their official duties at the time of the incident. The evidence was therefore sufficient to establish that element of MCL 750.81d(1).

## B. LEGALITY OF THE OFFICERS' CONDUCT

Defendant also contends that the officers acted unlawfully when they detained him, relying on *Prude*. In *Prude*, the officers attempted to detain the defendant for trespassing after finding him sitting in a parked vehicle in an apartment complex "known for frequent criminal activity." *Prude*, 513 Mich at 381. The defendant refused to identify himself, and although informed he was not free to leave, drove away at high speed. He was later convicted of resisting or obstructing a police officer. *Id*. at 383. The Supreme Court reversed, holding that the officers lacked the reasonable, particularized suspicion required to justify the detention under *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), and therefore acted unlawfully. *Prude*, 513 Mich at 392.

According to defendant, the facts here are not meaningfully different from those in *Prude*. He contends that the officers "responded to a domestic violence call placed by a third-party" and that he "was simply found outside the home at issue near the street." He argues that the officers immediately sought to detain him "by ordering him to stop," despite lacking "objectively reasonable particularized suspicion that defendant was engaged in" any criminal activity. He further asserts that he became uncooperative only after the officers asked him to stop and identify himself, which he maintains he was not legally required to do. On that basis, he claims that the evidence was insufficient to establish that the officers were acting lawfully.

That argument mischaracterizes the record. Body camera footage and the officers' testimony establish that they were dispatched to investigate a potential domestic assault. After parking his vehicle at the end of the driveway and exiting, Deputy Hall encountered defendant near the residence. He greeted defendant by name and explained that he had "heard there was something going on." In response, defendant placed his hands behind his back, backed away, and made combative and profane statements. Deputy Hall ordered him to show his hands, defendant refused, and an altercation ensued.

There is no support in the record for the claim that the officers sought to detain defendant before he made threatening gestures and hostile statements. Nor were defendant's convictions predicated on resisting an attempted detention or arrest, as was the case in *Prude*. *Id*. at 388 n 8. Rather, the prosecution proceeded on the theory that defendant violated MCL 750.81d(1) by refusing to follow the officers' lawful commands to show his hands. See *People v Feeley*, 499 Mich 429, 436; 885 NW2d 223 (2016) ("To 'obstruct' includes a knowing failure to comply with a lawful command.").

As for the applicable legal standard, the trial court instructed the jury:

A police officer has the legal authority to give commands to individuals for purposes such as securing or maintaining the safety of a scene, maintaining public

peace, or for rendering aid or assistance to persons in distress. The prosecutor must prove beyond a reasonable doubt that the officer was acting within his legal authority. It is up to you to determine whether the officer's actions were legal according to the law as I have just described it to you.

In returning a guilty verdict, the jury necessarily found that the officers were acting within their legal authority in commanding defendant to show his hands. The relevant inquiry on appeal, then, is not whether the officers had reasonable suspicion to detain defendant, but whether their commands were lawful in light of the circumstances.

The evidence was sufficient to establish that the officers' commands, "when viewed under a lens sufficiently deferential to that conduct," *Prude*, 513 Mich at 386, were lawful. The officers had been dispatched to investigate a potential domestic assault. Upon initial contact, defendant immediately placed his hands behind his back near his waistband and told Deputy Hall to "back the fuck up," and then refused to comply with repeated orders to show his hands, instead aggressively responding, "Don't worry about it. It's a magic trick, mother fucker." Under these circumstances, the officers were justified in fearing for their safety and were entitled to take reasonable steps to protect themselves. See *People v Stergowski*, 391 Mich 714, 718-719; 219 NW2d 68 (1974) (holding that the officers lawfully ordered a defendant to stop and drop his weapon based on safety concerns, even without probable cause to arrest him). The United States Supreme Court has similarly recognized that officers may take protective measures even absent probable cause when facing a potential threat. As the Court explained in *Terry*, when an officer reasonably believes that a person is "armed and presently dangerous," it would be "clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." 392 US at 24.

Given defendant's behavior—including his refusal to comply, his aggressive posture, and his ambiguous and potentially threatening comments—the officers reasonably feared for their safety and were justified in ordering him to show his hands. Because those commands were lawful, defendant's noncompliance supports his convictions under MCL 750.81d(1).

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Philip P. Mariani
/s/ Matthew S. Ackerman