*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KALAMAZOO PUBLIC SCHOOLS,

        Charging Party-Appellant,

v

KALAMAZOO EDUCATION ASSOCIATION, MEA/NEA

        Respondent-Appellee.

UNPUBLISHED
August 10, 2023

No. 363573

MERC
Case No. 21-G-1465-CU

Before: RIORDAN, P.J., and MARKEY and YATES, JJ.

PER CURIAM.

Appellant, Kalamazoo Public Schools, desires to transfer a guidance counselor holding a teaching certificate to a social-studies teaching position. Appellee, the Kalamazoo County Education Association, opposes any such transfer and seeks to arbitrate appellant's transfer decision.

The central dispute here is whether MCL 423.215(3)(j) of the Public Employment Relations Act (PERA), MCL 423.201 *et seq*., prohibits arbitration of the parties' disagreement. The Michigan Employment Relations Commission (MERC) agrees with appellee and concluded that the demand for arbitration is not prohibited by the statute. We disagree. Therefore, we reverse the MERC's order dismissing the unfair-labor-practice charge against appellee and remand to that agency for further proceedings consistent with this opinion.

## I. BACKGROUND FACTS

The facts of this case are straightforward. Appellant is a public-school district, and appellee is a collective-bargaining unit. In 2014, appellant hired Tiffany Spencer as a guidance counselor. She is represented by appellee. In addition to Spencer's counselor credentials, she holds a teaching certificate from the Michigan Department of Education in language arts and social studies for 6-12th grade students.

In April 2021, appellant transferred Spencer from her counselor position into a vacant, social studies classroom-teacher position. Shortly thereafter, appellee filed a grievance on her

-1-

behalf, contesting the transfer decision. Appellant denied the grievance. Appellee subsequently submitted a demand for arbitration. Appellant then initiated this case in July 2021 in the MERC for an alleged unfair labor practice by appellee. According to appellant, the issue of "teacher placement" is a prohibited subject of bargaining under MCL 423.215(3)(j) of PERA, so appellee could not demand arbitration in this matter. Appellee argued that the collective-bargaining agreement (CBA) between the parties provides that Spencer is a guidance counselor, not a teacher, so she cannot be transferred into a teaching position under the CBA, thus the matter should be arbitrated. Appellee contended that Spencer is not a "teacher" for the purposes of MCL 423.215(3)(j) because she does not teach students in the classroom and, consequently, the statute does not prohibit arbitration.

In June 2022, an Office of Administrative Hearings and Rules administrative law judge (ALJ) ruled in favor of appellant, reasoning that Spencer is a "teacher" for the purposes of MCL 423.215(3)(j) because, under MCL 38.71 of the Teachers' Tenure Act (TTA), MCL 38.71 *et seq*., "the term 'teacher' means a certificated individual employed for a full school year by any board of education or controlling board." Appellee filed exceptions to the ALJ's ruling, and the MERC reversed. The MERC reasoned that "[a]n individual employed as a Guidance Counselor" does not satisfy an ordinary dictionary definition of the word "teacher." The MERC declined to apply the TTA definition of the word "teacher" to MCL 423.215(3)(j) because the latter statute does not expressly incorporate the TTA definition. Therefore, the MERC dismissed the unfair-labor-practice charge.[1]

This appeal followed.[2]

## II. STANDARD OF REVIEW

The resolution of this case depends on the meaning of the word "teacher." Appellant argues that a harmonious reading of related statutes should be the reference used to make the determination. Appellee counters that a dictionary should be the controlling authority.

"Issues of statutory interpretation are reviewed de novo." *City of Riverview v Sibley Limestone*, 270 Mich App 627, 630; 716 NW2d 615 (2006). "[T]he agency's interpretation is entitled to respectful consideration and, if persuasive, should not be overruled without cogent reasons." *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 108; 754 NW2d 259 (2008). However, " '[r]espectful consideration' is not equivalent to any normative understanding of

---

[1] In a footnote, the MERC observed that in light of its decision, it was unnecessary to address appellee's argument concerning the Family and Medical Leave Act (FMLA). Because the FMLA issue is not before us, the MERC may address that issue on remand.

[2] While this appeal was pending in this Court, MCL 423.215 was amended to omit subsection (3)(j). See 2023 PA 115. However, that amendment is not yet effective and, in any event, it may not necessarily resolve the viability of the unfair-labor-practice charge itself. See footnote 13, *supra*. Therefore, we will proceed to decide the merits of the issue before us.

'deference' as the latter term is commonly used in appellate decisions." *Id*. "[T]he agency's interpretation cannot conflict with the plain meaning of the statute." *Id*.

## III. DISCUSSION

Appellant argues that the word "teacher" in MCL 423.215(3)(j) of PERA is defined by MCL 38.71(1) of the TTA or MCL 380.1249(8) of the Revised School Code (RSC), MCL 380.1 *et seq*., or both, and that the MERC erred by disregarding both of these statutory definitions in favor of dictionary definitions of the word "teacher." Appellee, on the other hand, argues that the MERC correctly adopted the dictionary definitions. We agree with appellant that the TTA definition of "teacher" is controlling.[3]

MCL 423.215 provides, in relevant part:

(2) A public school employer has the responsibility, authority, and right to manage and direct on behalf of the public the operations and activities of the public schools under its control.

(3) Collective bargaining between a public school employer and a bargaining representative of its employees shall not include any of the following subjects:

* * *

(j) Any decision made by the public school employer regarding teacher placement, or the impact of that decision on an individual employee or the bargaining unit.

* * *

(4) Except as otherwise provided in subsection (3)(f), the matters described in subsection (3) are prohibited subjects of bargaining between a public school employer and a bargaining representative of its employees, and, for the purposes of this act, are within the sole authority of the public school employer to decide.[[4]]

By enacting MCL 423.215(3)(j) of PERA, "the Legislature intended to remove from the ambit of bargaining any decision concerning the assignment or placement of teachers, and that any decision-making about teacher placement or assignments is to be within the sole discretion of the employer." *Ionia Ed Ass'n v Ionia Pub Sch*, 311 Mich App 479, 487; 875 NW2d 756 (2015) (emphasis omitted).

---

[3] As will be explained further *infra*, the TTA controls the outcome of the matter before us. Thus, we need not consider the RSC in our analysis.

[4] MCL 423.215(3)(f) concerns "noninstructional support services" and is not relevant here.

MCL 423.215(3) of PERA includes three explicit references to the TTA. See MCL 423.215(3)(*l*) (providing that decisions about "a public school employer's performance evaluation system" under the TTA is a prohibited subject of bargaining); MCL 423.215(3)(m) (providing that certain disciplinary policies for public employees governed by the TTA are prohibited subjects of bargaining); MCL 423.215(3)(n) (providing that the terms of classroom observations conducted for the purposes of the TTA are prohibited subjects of bargaining). In turn, the TTA contains numerous provisions regulating the suspension, demotion, or discharge of a tenured "teacher." See, e.g., MCL 38.91; MCL 38.101; MCL 38.103. MCL 38.71(1) of the TTA provides that "[t]he term 'teacher' as used in this act means a certificated individual employed for a full school year by any board of education or controlling board."[5]

Again, at its core, in this appeal we must determine the meaning of the word "teacher" in MCL 423.215(3)(j) of PERA. "Any word or phrase that comes before a court for interpretation is part of a whole statute, and its meaning is therefore affected by other provisions of the same statute. It is also, however, part of an entire *corpus juris*." Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), p 252. "*In pari materia* (or the related-statutes canon) provides that laws dealing with the same subject should if possible be interpreted harmoniously." *SBC Health Midwest, Inc v City of Kentwood*, 500 Mich 65, 73 n 26; 894 NW2d 535 (2017) (cleaned up). Under the doctrine of *in pari materia,* "statutes that relate to the same subject or that share a common purpose should, if possible, be read together to create a harmonious body of law." *People v Mazur*, 497 Mich 302, 313; 872 NW2d 201 (2015). "An act that incidentally refers to the same subject is not *in pari materia* if its scope and aim are distinct and unconnected." *Id*.

> The rule that statutes *in pari materia* should be construed together has the greatest probative force for statutes relating to the same subject and passed at the same legislative session, especially if they were passed or approved or take effect on the same day, or where a later statute refers to an earlier statute. [2B Singer & Singer, Sutherland Statutory Construction (7th ed.), § 51:3 (footnotes omitted).]

Thus, for example, the fact that legislative bills are tie-barred strongly suggests that the corresponding statutory provisions should be interpreted *in pari materia*. See *Measel v Auto Club Group Ins Co*, 314 Mich App 320, 327-329; 886 NW2d 193 (2016). Moreover, the doctrine of *in pari materia* "is especially true where one Act makes a cross-reference to another Act." *Will Co v Village of Rockdale*, 226 Ill App 3d 634, 636; 589 NE2d 1017 (Ill Ct App, 1992).

---

[5] "[T]he purpose of the protections provided under the [TTA] is not to guarantee teachers continuing employment under any circumstances but rather to protect teachers from the arbitrary and capricious conduct of school officials." *Dailey v Mackinac Island Bd of Ed*, 120 Mich App 187, 189; 327 NW2d 431 (1982). One of the "goals" of the TTA is "to protect and improve State education by retaining in their positions teachers who are qualified and capable and who have demonstrated their fitness, and to prevent the dismissal of such teachers without just cause." *Rockwell v Bd of Ed of Sch Dist of Crestwood*, 393 Mich 616, 632; 227 NW2d 736 (1975) (quotation marks and citation omitted).

The TTA and MCL 423.215(3) of PERA concern the same subject—school administrative decisions regarding employees, particularly teachers. For example, MCL 38.103(3) of the TTA provides that "[i]f criminal charges have been filed against a teacher, a controlling board may place the teacher's salary in an escrow account during a suspension . . . ." In other words, the TTA generally governs how a public school should address the compensation of a teacher during the disciplinary process. MCL 423.215(3)(m) of PERA, in comparison, provides that "[f]or public employees whose employment is regulated by [the TTA], decisions about the development, content, standards, procedures, adoption, and implementation of a policy regarding discharge or discipline of an employee" are prohibited subjects of bargaining. Thus, MCL 423.215(3)(m), as with MCL 38.103(3), controls certain issues about the teacher disciplinary process.

Further, as specifically relevant to this case, the TTA regulates the "demotion" of a teacher. See MCL 38.101(1). And, as noted, MCL 423.215(3)(j) of PERA provides that "[a]ny decision made by the public school employer regarding teacher placement, or the impact of that decision on an individual employee or the bargaining unit" is a prohibited subject of bargaining. Thus, both the TTA and PERA's MCL 423.215(3)(j) address the internal assignment of a "teacher." Because the TTA and MCL 423.215(3) concern the same subject, and because MCL 423.215(3) includes multiple explicit references to the TTA, we conclude that the TTA and MCL 423.215(3) are *in pari materia*. Consequently, the definition of "teacher" set forth in the TTA, MCL 38.71, should be applied to the use of the word "teacher" in PERA's MCL 423.215(3)(j). See *SBC Health Midwest*, 500 Mich at 73 n 26.

The conclusion that the TTA and PERA's MCL 423.215(3) are *in pari materia* is reinforced by legislative history. In this regard, subsections (j) to (p) were added to MCL 423.215(3) by House Bill 4628. See 2011 PA 103. House Bill 4628 was tie-barred with House Bill 4625, which amended the TTA; House Bill 4626, which also amended the TTA; and House Bill 4627, which amended the RSC.[6] The primary purpose of these tie-barred bills, according to this Court, was to "effect[] a massive redistribution of power in the realm of teacher layoffs—from teacher unions to the local school districts as decision-makers, and from administrative agencies to the courts as the only recourse to review challenged layoff decisions." *Baumgartner v Perry Pub Sch*, 309 Mich App 507, 513; 872 NW2d 837 (2015). In any event, the fact that subsection (j) was added to MCL 423.215(3) in PERA simultaneously with two tie-barred bills amending the TTA clearly shows that the Legislature contemplated the TTA when adding subsection (j). For this additional reason, the TTA and MCL 423.215(3) are *in pari materia*. See *Trinova Corp v Dep't of Treasury*, 433 Mich 141, 166 n 28; 445 NW2d 428 (1989) (explaining that "the guiding principle for whether statutes are in pari materia is whether it is natural and reasonable to think that the understanding of members of the Legislature would be influenced by the other statute").

The dissent reasons that the definition of "teacher" in the TTA cannot be applied to MCL 423.215(3)(j) because the TTA provides that its definition of "teacher" is "as used in this act."

---

[6] House Bill 4625 was codified by 2011 PA 101, House Bill 4626 was codified by 2011 PA 100, and House Bill 4627 was codified by 2011 PA 102.

MCL 38.71(1). In other words, the dissent reasons, the TTA definition of "teacher" is limited to the TTA itself.[7] Respectfully, we disagree.

As explained, the TTA is *in pari materia* with MCL 423.215(3). The qualifier "as used in this act" does not preclude application of a definition to other acts that are *in pari materia*. See *People v Anderson*, 330 Mich App 189, 199 n 6; 946 NW2d 825 (2019). In *Anderson*, for example, this Court concluded that MCL 750.492a of the Penal Code, which criminalizes intentionally modifying medical records, was *in pari materia* with the Medical Records Access Act (MRAA), MCL 333.26261 *et seq*., and as a result, it was appropriate to apply the MRAA definition of "medical record" to MCL 750.492a despite the fact that MCL 333.26263 of the MRAA qualifies its definitions with the language "[a]s used in this act." *Id*.

Indeed, our Supreme Court has explained that "[w]hen statutes do not deal with the same subject or share a common purpose *and* the Legislature has chosen to specifically limit the applicability of a statutory definition, the doctrine of *in pari materia* is inapplicable." *People v Feeley*, 499 Mich 429, 444; 885 NW2d 223 (2016) (some emphasis added). In other words, the qualifier "as used in this act," or other similar qualifier, precludes application of a particular definition to other acts when the two statutes in question "do not deal with the same subject or share a common purpose." See *id*. In this case, however, the TTA and MCL 423.215(3) of PERA do deal with the same subject.[8] Therefore, the TTA definition of "teacher" should be applied to MCL 423.215(3)(j).

The dissent also reasons that the TTA definition of "teacher" cannot be applied to MCL 423.215(3)(j) because MCL 423.215(3) includes explicit references to the TTA, but no such reference is found in MCL 423.215(3)(j), so the omission is presumed to be intentional. See *People v Peltola*, 489 Mich 174, 185; 803 NW2d 140 (2011). Again, we disagree. Statutes are not required to have redundant cross-references to be *in pari materia*. For example, the General Sales Tax Act (GSTA), MCL 205.51 *et seq*., and the Use Tax Act (UTA), MCL 205.91 *et seq*., are *in pari materia* because "[t]he provisions . . . are complementary." *World Book, Inc v Dep't of Treasury*, 459 Mich 403, 408; 590 NW2d 293 (1999). See also *By Lo Oil Co v Dep't of Treasury*, 267 Mich App 19, 52-53; 703 NW2d 822 (2005) (holding that the UTA definition of "purchase" applies to the GSTA because the two statutes are *in pari materia*).[9] But, following the dissent's reasoning, the GSTA and the UTA cannot be *in pari materia* because only a few provisions of the

---

[7] Moreover, while not directly stated by the dissent, it implies that the RSC definition of "teacher" similarly does not apply to MCL 423.215(3)(j) because the RSC definition includes the qualifier "[a]s used in this section." MCL 380.1249(8).

[8] In our view, the qualifier "as used in this act" merely states the elementary principle that a particular definition does not have universal application within statutory law. Thus, for example, the TTA definition of "teacher" does not apply to uses of the word "teacher" in the Penal Code because the TTA and the Penal Code are unrelated statutes.

[9] Notably, in *By Lo Oil Co*, this Court applied the UTA definition of "purchase" to the GSTA despite the fact that the UTA definition includes the qualifier "[a]s used in this act." See MCL 205.92. As explained, the qualifier "as used in this act" does not preclude application of the *in pari materia* doctrine.

UTA explicitly reference the GSTA, see, e.g., MCL 205.95(1), and only a few provisions of the GSTA explicitly reference the UTA, see, e.g., MCL 205.54v(1). Common sense suggests otherwise. Simply, the Legislature need not include dozens or hundreds of unnecessary, explicit cross-references between the GSTA and the UTA to establish that these two statutes are *in pari materia*.

So too here. Given that the TTA and MCL 423.215(3) concern the same subject, and MCL 423.215(3) includes three explicit references to the TTA, the Legislature was not required to include numerous other explicit references between the two statutes to have them be properly interpreted as *in pari materia*. This is particularly true with regard to PERA's MCL 423.215(3)(j), which concerns teacher assignments—one of the subjects also addressed by the TTA.

Finally, the dissent reasons that appellant's position lacks merit because, according to appellant, "an individual hired for a non-teaching position such as a counselor who holds a teaching certificate would have to surrender the teaching certificate or risk being involuntarily placed as a classroom teacher," and such an outcome "defies logic." However, such an outcome is eminently reasonable when the TTA and MCL 423.215(3) of PERA are interpreted *in pari materia*. MCL 38.91(7) of the TTA provides, in relevant part:

> For a teacher employed in a capacity other than as a classroom teacher, including but not limited to, a superintendent, assistant superintendent, principal, department head or director of curriculum, under a contract of employment made with the teacher after the completion of the probationary period, a controlling board shall not provide in the contract of employment that the teacher will be considered to be granted continuing tenure in that other capacity by virtue of the contract of employment. Such a teacher shall be considered to have been granted continuing tenure only as an active classroom teacher in the school district. Upon the termination of such a contract of employment, if the controlling board does not reemploy the teacher under contract in the capacity covered by the contract, the teacher shall be continuously employed by the controlling board as an active classroom teacher. . . .

In other words, the protections of the TTA extend to a "teacher" under that act, regardless of whether that teacher is "employed in a capacity other than as a classroom teacher." See *id.* In *Belanger v Warren Consol Sch Dist, Bd of Ed*, 432 Mich 575; 443 NW2d 372 (1989), our Supreme Court explained that under the then-existing version of MCL 38.91, the plaintiff-school counselors were "classroom teachers" for the purposes of that statute, and thus could not be denied teacher tenure simply because they instructed students outside the classroom: "In this case [a contrary conclusion] leads to the arbitrary and absurd result that the Legislature intended that a school district have the power to deny tenure to any person employed as a teacher, but who spends the majority of the school day outside of a classroom, regardless of how much of the time is spent with students." *Id.* at 589. "There is no support for a conclusion that the Legislature intended that a school district have the power to deny tenure to any person employed as a teacher whose primary duty is not teaching in the classroom." *Id.* at 592.

Accordingly, the TTA and MCL 423.215(3)(j) of PERA create a tradeoff for individuals with a teaching certificate, regardless of whether they are employed in an ordinary classroom

setting. On one hand, those individuals may be protected by the TTA. See, e.g., MCL 38.101(1) (limiting the "demotion of a teacher on continuing tenure").[10] On the other hand, placement of those individuals is "within the sole authority of the public school employer to decide." MCL 423.215(4). This tradeoff "is in accordance with the job security envisioned by the [TTA] which is a guarantee of continued employment and not a guarantee of continued employment in a specific position . . . ." *Belanger*, 432 Mich at 592.[11]

Turning to the appeal before us, the word "teacher" in MCL 423.215(3)(j) is defined by MCL 38.71 of the TTA, which provides, in relevant part, that "teacher" is "a certificated individual employed for a full school year by any board of education or controlling board."[12] MCL 38.71(1). The parties do not dispute that Spencer satisfies this definition because she holds a valid teaching certificate and was employed for a full school year. That is, Spencer is a "teacher" for the purposes of MCL 423.215(3)(j). Therefore, the matter of her classroom placement is a prohibited subject of bargaining under MCL 423.215(3)(j) because the matter involves a "decision made by the public school employer regarding teacher placement," and the MERC erred by concluding otherwise.

## IV. CONCLUSION

The word "teacher" in MCL 423.215(3)(j) is defined by MCL 38.71 of the TTA because the TTA and MCL 423.215(3) of PERA are *in pari materia*. The MERC erred by concluding otherwise. Accordingly, we reverse the MERC's order dismissing the unfair-labor-practice charge

---

[10] MCL 38.74 defines "demote," in relevant part, as "to suspend without pay for 15 or more consecutive days or reduce compensation for a particular school year by more than an amount equivalent to 30 days' compensation or to transfer to a position carrying a lower salary."

[11] In so reasoning, we do not necessarily suggest or conclude that all guidance counselors are "teachers" for the purposes of the TTA or that Spencer herself is a "teacher" for the purposes of the TTA. Nor do we necessarily suggest or conclude that the CBA in the matter before us is inconsistent with the TTA as to some of its distinctions between typical classroom teachers and guidance counselors such as Spencer with a teaching certificate. Instead, we simply observe that the TTA extends to some individuals beyond typical classroom teachers. We note, however, that the ALJ stated that "Michigan Department of Education Administrative Rule 390.661[] further clarifies what the term 'teacher' means in the TTA and would appear to include the position of Guidance Counselor into that definition." In this regard, Mich Admin Code R 390.661(1) provides, in relevant part, that "[f]or the purposes of teacher tenure under the provisions of article II of [the TTA], MCL 38.81 to 38.84, 'certificated,' as it refers to teachers, shall include any teacher who holds a Michigan teaching certificate, as defined by R 390.1101, which is valid for the position to which he or she is assigned, *or any teacher employed in a school guidance counselor position holding any Michigan teaching certificate with a school guidance counselor endorsement* . . . ." (Emphasis added.) We also note that appellant represents on appeal that "Ms. Spencer, as a counselor with a MDE teaching certification, is protected by the Teachers' Tenure Act."

[12] MCL 38.72 provides that "[t]he term 'certificated' means holding a valid teaching certificate, as defined by the state board of education."

against appellee and remand to that agency for further proceedings consistent with this opinion.[13] We do not retain jurisdiction.[14]

/s/ Michael J. Riordan
/s/ Jane E. Markey

---

[13] Whether and to what extent the unfair-labor-practice charge, as originally filed, remains viable notwithstanding the recent statutory amendment may be addressed by the MERC on remand.

[14] Finally, even if the dissent does not accept that the TTA and MCL 423.215(3) are *in pari materia*, we still disagree with its conclusion that dictionary definitions of "teacher" control here. Seven different subsections of MCL 423.215(3) refer to the RSC, and subsection (*l*) specifically refers to MCL 380.1249 of the RSC. MCL 380.1249(8) provides, in relevant part, that " 'teacher' means an individual who has a valid Michigan teaching certificate or authorization . . . and who is assigned by the school district . . . to deliver direct instruction to pupils . . . ." Thus, both the TTA and the RSC, which are repeatedly referenced in MCL 423.215(3), suggest that a "teacher" for the purposes of MCL 423.215(3) is a person who holds a valid teaching certificate. Further, Spencer satisfies the definition of "teacher" in MCL 380.1249(8) because she holds a teaching certificate and was assigned by appellant to deliver direct instruction to pupils in the classroom.

We acknowledge that the MCL 380.1249(8), of the RSC, definition of "teacher" is slightly different from the TTA definition of "teacher." In our view, however, the TTA definition supersedes the RSC MCL 380.1249(8) definition for our purposes because MCL 380.1249 only concerns a performance evaluation system, which is referenced only by MCL 423.215(3)(*l*), of PERA. In contrast, the TTA addresses school administration in multiple respects, and multiple subsections of PERA, MCL 423.215(3), reference the TTA, explicitly or implicitly. As a result, the TTA is more specific to the matter before us than the RSC's MCL 380.1249.